# Wytheville.

## Norfolk & Western R. R. Co. v. Neely.

### June 27, 1895.

91  539
93  648

91  539
94  419

91  539
95  207

91  539
d100  68
100  316

91  539
101  451

1. Expulsion of Passengers—*Damages—Compensatory—Punitive.*—A passenger who is unlawfully expelled from a railroad train by the conductor thereof is entitled to recover damages therefor of the company. If the expulsion, though unlawful, did not proceed from any ill motive, and was not rudely or recklessly done, nor in such manner as to evince malice or a conscious diregard of the rights of others, and was simply the result of a mistake, the passenger cannot recover punitive damages, but only compensation, and, on the evidence certified, his damages should be limited to compensation for the inconvenience, delay and fatigue to which he was put, and a suitable recompense for the injury done to his feelings, in being expelled from the train.

2. Damages—*Actual or Compensatory—Exemplary or Punitive.*—Actual or compensatory damages are the measure of the loss or injury sustained, while exemplary or punitive damages are something in addition to full compensation, and something not given as his due, but for the protection of the public. The law awards the former only where in the unlawful act there is an absence of intentional wrong, fraud, or malice, or the act is not oppressively or recklessly committed; while the latter are given where the wrongful act is done with a bad motive, or with such gross negligence as to amount to positive misconduct, or in a manner so wanton or reckless as to manifest a willful disregard of the rights of others.

3. Instructions—*No Evidence to Support.*—Where there is no evidence to support an instruction asked for, which is a matter to be determined by the court, it should not be given.

4. Master and Servant—*Damages—Unlawful Act of Servant—Tortious Act—Ratification.*—A master is liable to the extent of compensatory damages for the unlawful act of his agent committed in the course of his employment, whether ratified or not. But in an action to recover exemplary damages of the master, for the tortious act of the servant, ratification of the master must be shown.

Error to a judgment of the Circuit Court of the city of Roanoke, rendered May 19, 1894, in an action of trespass on the case, in which the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Watts, Robertson & Robertson* and *Scott & Staples,* for the plaintiff in error.

*Penn & Cocke,* for the defendant in error.

REILY, J., delivered the opinion of the court.

This was an action of trespass on the case to recover damages for being expelled from a passenger car by the conductor. There were two trials in the court below. On the first trial the jury rendered a verdict for $1,000, which, on the motion of the defendant, was set aside and a new trial awarded; and on the second trial a verdict of $800 was rendered, which the court refused to set aside, but gave judgment thereon.

It was conceded that the plaintiff in the suit, J. M. Neely, had a right of action against the defendant company to recover damages for his expulsion from the car, and the real point of controversy was the measure of recovery for the unlawful act. Was he entitled under the circumstances of the case, as shown by the evidence, to actual or compensatory damages only, or was he entitled to recover in addition exemplary or punitive damages? Actual or compensatory damages are the measure of the loss or injury sustained, while exemplary or punitive damages are "something in addition to full compensation, and something not given as his due, but for the protection of the public." The law awards the former only where in the unlawful act there is an absence of intentional

wrong, fraud, or malice, or the act is not oppressively or recklessly committed, while the latter are given where the wrongful act is done with a bad motive, or with such gross negligence as to amount to positive misconduct, or in a manner so wanton or reckless as to manifest a willful disregard of the rights of others.

On the first trial the plaintiff asked for two instructions which were given by the court, and on the last trial the court, at the instance of the plaintiff, gave four instructions, the second and third of which are the same as the two given for the plaintiff on the first trial.   On the first trial the defendant asked five instructions, all of which were refused.   They were the same as the first five of the seven instructions asked by the defendant on the last trial.   The court, on the last trial, refused all of the defendant's instructions, except the fifth, which it gave with an explanatory amendment.   The consideration of these instructions and of the action of the court in respect to them involves the determination of the question at issue, and of the errors assigned in the petition for the writ of error awarded by this court.   As all of the instructions asked for, and refused or given, on the first trial, were renewed on the second trial, it is only necessary to consider those presented on the latter trial.

We perceive no error in the first and second instructions given for the plaintiff, or in the fifth instruction of the defendant which was likewise given.   Nor did the court err in rejecting the other instructions asked for by the defendant.   This leaves for consideration the correctness of the third and fourth instructions given to the jury at the instance of the plaintiff.

The third instruction was as follows: "Should the jury further believe from the evidence that the act of the said conductor was not only illegal, but was also wanton or oppressive, or in utter disregard of the rights of the plaintiff, and that after the defendant company had knowledge of such act it partici-

pated in or ratified it, expressly or by implication, then the jury may add to actual damages something by way of punitive damages against the defendant.    Punitive damages are damages against a party who has wronged another in a wanton, willful or oppressive manner in disregard of his rights, as a warning to him and others to prevent them from committing like offences in the future.''

This instruction assumes that there was evidence before the jury not only of an illegal act, but evidence that tended to prove that the act was done in a wanton and oppressive manner and in utter disregard of the rights of the plaintiff, and also evidence that the defendant company, with knowledge thereof, ratified what its agent, the conductor, had done.    The instruction informed the jury that if satisfied that these facts were proved by the evidence, they had the right to inflict on the defendant company exemplary or punitive damages.    The propriety of this instruction depends upon the evidence before the jury.    If there was evidence tending to prove the acts hypothetically stated in the instruction, then its sufficiency to establish them was for the determination of the jury, and it was right to give the instruction; but if there was no evidence to that end, which was a matter for the court to decide, it should not have been given; for, where there is no evidence to support an instruction that is asked for, it should not be given, and if given it is reversible error.    *Borland* v. *Barrett*, 76 Va. 133; *Rea's Adm'r* v. *Trotter & Bro.*, 26 Gratt. 585; *Chicago R. R. Co.* v. *Scurr*, 42 Amer. Rep. 376; Thompson on Negligence, 2 Vol. 7246; and *Milwaukee R. R. Co.* v. *Arms*, 91 U. S. 489.

The defendant company operates, as lessee, the branch line of railroad running from Roanoke city, Va., to Winston, N. C., and known as the Roanoke & Southern road.    The nearest station to Roanoke city, and distant six miles, is called Starkie, and eight miles further on is the next station, known

as Boone's Mill. The plaintiff lived at Roanoke city, and on May 28, 1893, which was Sunday, he decided to pay a social visit to some friends who resided at Boone's Mill. He bought from the ticket agent of the defendant company at Roanoke a ticket to Boone's Mill, which he showed to a Mr. Armentrout, his friend and business partner, who was with him. They entered the car and took a seat together. After the train had started, and before it reached Starkie the conductor came through the car to take up the tickets of the passengers. When he reached Neely and Armentrout, who were seated near the rear end of the car he took up the ticket of Neely and also took out of the mileage book of Armentrout the mileage to Boone's Mill, to which place the latter was also going. After the train had proceeded a mile or so beyond Starkie, the conductor again came through the car, and asked Neely for his ticket. He answered that he had already given his ticket to him. The conductor replied that he had not done so; that the ticket which he had given to him was for Starkie. Further words passed between them, when the conductor said, "You will have to give a ticket or money or get off." Neely replied, "You will have to put me off, for I won't get off," and turned to Armentrout and asked him if he had not given his ticket to the conductor. Armentrout answered that he had. Neely then told the conductor to look through his tickets and he would find one to Boone's Mill. The conductor responded that he did not have to do so, by which language he meant, as he explained on the trial, that he had already examined them. He explained that in taking up tickets it was his practice to put them in rotation as passengers occupied seats in the car, so as to assist his memory, if he did not recollect the destination of the passenger; that when he first took up the tickets on this occasion, after leaving Roanoke city, he tore out of Armentrout's book the necessary mileage to Boone's Mill and took up Neely's ticket, which he

read "Starkie," and that he fixed it in his mind that in this seat there was one passenger for Starkie and one for Boone's Mill, and put the tickets in this rotation; that when he came through the car again, he noticed that Neely had left his seat, and on examining his tickets he found a ticket for Starkie corresponding to the seat Neely had first occupied, but which must in fact have represented the seat just opposite. Acting under the belief that Neely's ticket was for Starkie, and Neely failing to give him a ticket after remaining on the train beyond Starkie, or to pay the fare to Boone's Mill, which was thirty cents, he stopped the train and put him off. In doing so, the evidence shows that the conductor was guilty of no rudeness or violence. The ejection was effected quietly and respectfully. Neely offered no physical resistance, and only required that he be put off, which was done by the conductor taking hold of his arm or coat and leading him to the rear end of the car, where Neely still refusing to get off, he led him down the steps of the platform until he was wholly off the train.

After Neely had thus been expelled from the car, and before the train arrived at Boone's Mill, the conductor came to where Armentrout was sitting and began to talk with him about the matter. Armentrout told him that he had made a mistake; that Neely's ticket was for Boone's Mill, and that he was willing to go before a justice of the peace and make oath to that effect. The conductor thereupon said that he supposed then he had made a mistake. When the train arrived at Boone's Mill, the conductor again came to Armentrout and said: "I guess I made a mistake; here is $2; you get a carriage and send back for Mr. Neely, and if you need any more money, you pay it, and when I come to town, I will make it good." Armentrout did not succeed in getting a conveyance, and he returned the money to the conductor when he came back with his train the next day to Roanoke city.

It is apparent from this recital of the testimony that while the act of the conductor in expelling Neely was unlawful, it proceeded from no ill motive, and was not rudely or recklessly done. It was the result of a mistake on the part of the conductor, and due to negligence or absence of mind in reading the ticket of Neely when he took it up. But when he was assured by Armentrout that he had made a mistake, he manifested his penitence and did all in his power to rectify it. His subsequent conduct was conclusive against any imputation of malice and repelled all presumption of intentional wrong. It was clearly not a case for exemplary or punitive damages. In Sutherland on Damages, second edition, sec. 393, p. 847, the law on this subject is thus stated: "A tort committed by mistake, in the assertion of a supposed right, or without any actual wrong intention, and without such recklessness or negligence as evinces malice or conscious disregard of the rights of others, will not warrant the giving of damages for punishment, where the doctrine of such damages prevails." And to the same effect are *Hamilton* v. *Third Ave. R. R. Co.*, 53 N. Y. 25; *Chicago R. R. Co.* v. *Scurr*, 42 Amer. R. 373; *Philadelphia W. & B. R. R. Co.* v. *Rice*, 21 Alt. Rep. 97; *L. N. & G. S. R. R. Co.* v. *Guinan*, 47 Amer. Rep. 279; *N. & W. R. R. Co.* v. *Lipscomb*, 90 Va. 137; and *Milwaukee R. R. Co.* v. *Arms*, 91 U. S. 489. The evidence furnished no foundation for instruction No. 3, and the court erred in giving it to the jury.

The plaintiff was unlawfully expelled from the car, and was entitled to be fully recompensed for the injury. He resided at Roanoke city, but was engaged in the tanbark business, and had his place of business between the stations Starkie and Boone's Mill, about two or two and a half miles south of Starkie. It was his habit to go to his place of business on the cars once or twice a week, and to get off sometimes at one station and sometimes at the other, whence he was ac-

customed to walk to his place of business.    On the day he was
expelled from the car he had to walk about half a mile further
than he was accustomed to do when he got off the train at
Boone's Mill.    He did not sustain any physical injury, nor
suffer any pecuniary loss.    He was not thrust out into in-
clement weather.    The day was fair and warm.    He arrived
at his destination too late to accompany to church the friends
he was going to visit, and in this he was disappointed.    He
was entitled to full compensation for the unlawful act to which
he was subjected.    He was entitled to compensation for the
inconvenience, delay, and fatigue to which he was put, and a
suitable recompense for the injury done to his feelings in being
expelled from the train; but he was not entitled to recover
in addition exemplary or punitive damages as a protection to
the public for the unintentional wrong or mistake of the con-
ductor.    The verdict of the jury exceeded any compensatory
limit, and can only be accounted for upon the theory that
the jury, under the erroneous instruction of the court, gave
to him exemplary damages.

Instruction No. 4, which was also given at the instance of
the plaintiff, was intended to inform the jury as to what con-
stituted evidence tending to show a ratification by the defen-
dant company of the unlawful act of its conductor with a view
to its consequent liability.    A master is liable, to the extent
of compensatory damages, for the unlawful act of his agent
committed in the course of his employment, whether ratified
or not; and such instructions as the one above referred to
would only be proper in a case where the law awarded ex-
emplary damages for the tortious act of the agent.    It was
intended to be and was supplemental to instruction No. 3, and
could only be relevant and proper in case that instruction was
proper.    We have seen that it was error in the court to give
that instruction, and it follows that it was error to give this
one.

The court having erred in giving to the jury instructions Nos. 3 and 4, the judgment must be reversed and annulled, the verdict of the jury set aside, and the case remanded to the Circuit Court for the city of Roanoke for a new trial; upon which new trial, if the evidence should be substantially the same as on the last trial, the said instructions, if asked for, are not to be given, but the jury instructed in accordance with the views expressed in the foregoing opinion.

Reversed.