# Richmond.

## Franklin Plant Farm, Inc. v. Nash and Others.

### November 11, 1915.

1. Landlord and Tenant—*Lease—Covenant against Assignments—Waiver.*—A single covenant against the assignment of a lease once waived cannot ordinarily be thereafter retracted, but if the lessor consents to a single assignment of the lease and puts the same restriction on assignments upon the assignee, the restriction is valid and binding upon the assignee and prohibits assignments by him.

2. Landlord and Tenant—*Lease—Covenant against Assignment—Effect of Mortgage by Lessee—Deed of Trust to Secure Debts.*—A deed of trust to secure a debt is in the nature of a mortgage, and a mortgage is never construed as such an assignment of a leasehold interest as to cause a forfeiture under a covenant in a lease prohibiting an assignment, unless it be that the mortgagee has an absolute right to enter on the property or to sell the estate of the lessee in the leasehold and actually exercises such authority.

3. Landlord and Tenant—*Lease—Covenant against Assignment—Deed of Trust by Lessee.*—In order for a deed of trust on a leasehold estate securing debts to act as an assignment of the lease, it is necessary that there should have been not only a sale under the deed of trust, but the purchaser at such sale should have complied with the terms thereof, thereby entitling him to enter into possession of the leasehold in so far as the authority of the trustee in the deed of trust could license him to do so.

4. Damages—*Exemplary—Evidence—Instructions.*—Where the evidence tends to prove a case of exemplary or punitive damages, and the plaintiff requests it, the jury should be instructed on that phase of the case.

5. Damages—*Exemplary—When Allowed.*—The general rule in awarding damages for a tort is to give compensation for the pecuniary loss sustained—to make amends or reparation for the injury inflicted—but where the wrongful act is done with a bad motive, or with such gross negligence as to amount to positive misconduct, or in a manner so wanton or reckless as to manifest a wilful disregard of the rights of others, the plaintiff is entitled to recover not only the determinable money loss which the evidence shows he has sustained, but such exemplary and punitive damages as are called for by the circumstances of the case.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of trespass on the case. Judgment for the defendants. Plaintiff assigns error.

*Reversed.*

The instructions given on motion of the defendant and referred to in the opinion of the court were as follows:

B. The court instructs the jury that if they believe from the evidence that the lease from the defendants to the plaintiff contained provisions and covenants to be observed by the plaintiff, and further provided that for breach of said covenant the defendants could re-enter upon said property, and that the plaintiff did violate said conditions, the defendants had a right to re-enter and take possession of said property, and the plaintiff is not entitled to recover any damages on account of said re-entry.

D. The court instructs the jury that if the plaintiff relied upon a waiver of a condition in the contract of lease, it is incumbent upon it to prove by the preponderance of the testimony that the condition was in fact waived, and in order to establish a waiver of an agreement the proof must be clear and convincing; and nothing done by the lessors before they had knowledge of forfeiture can have the effect of waiving it. Encyc. Ev., vol. 13, p. 1020; 40 Cyc., 259-260-61; 13 Gratt. 278.

E. The court further instructs the jury that if they believe from the evidence that under the terms of the lease from the defendants to the plaintiff certain property therein mentioned was to be and become the property of the lessors, the defendants at the termination of the lease, and that the plaintiff made a deed of trust upon said property to R. R. Hicks, trustee, in which deed of trust it was provided that in default in the payments of the debts therein secured said R. R. Hicks, trustee, should make sale of said property, that said conveyance and deed of trust and offering of the property for sale thereunder,

was a breach of the conditions of the lease and on the happenings of such breach the defendants were entitled to re-enter upon said property, and the plaintiff is not entitled to recover any damages which it may have sustained by reason of said re-entry, provided you believe the assignment of the lease to the corporation was made with the understanding between the parties that the corporation was to take the property under the lease subject to the same provisions as to forfeiture as applied to the original parties to the contract.

F.   The court further instructs the jury that the conditions and covenants contained in the lease were binding upon the lessee, the plaintiff in this action, and if the plaintiff violated the provisions of said lease, the defendants were entitled to re-enter upon said property and are not liable to the plaintiff for any damages which may have been caused to it by said re-entry.

The following are the instructions given by the court of its own motion, also referred to in the opinion:

4.   The court instructs the jury that even though they believe from the evidence that the lease dated February 26, 1912, between F. P. Stras and F. F. Nash on one side and Frank Brunton on the other was on condition that the said Brunton should not assign or sublet said term without leave given in writing by the said Nash and Stras, still, if as a matter of fact, the evidence shows that said Brunton did assign or sublet said lease to the Franklin Plant Farm, Inc., and that with the knowledge of this fact, the said Stras and Nash accepted rent from the Franklin Plant Farm, Inc., or with this knowledge permitted said Franklin Plant Farm, Inc., to expend money in improving said property, then, such conduct on the part of said Stras and Nash was a waiver of the conditions as to the assignment, so far as the assignment to the Franklin Plant Farm, Inc., and the jury are further instructed that if the said Stras and Nash once waived said condition, they thereupon discharged said condition provided you believe the assign-

ment to the corporation was made without limitations or conditions as to reassignment, in which event it had the right to assign said leasehold interest as if no condition to the contrary had ever been imposed, and the execution by it of a deed of trust or other conveyance did not work a forfeiture of the lease, nor justify the defendant in re-entering and taking possession.

5. The court instructs the jury that if they believe from the evidence that the plaintiff, Franklin Plant Farm, Inc., was in possession of the premises described in the declaration and that the defendant unlawfully dispossessed plaintiff of said possession and converted the permanent improvements placed by it to their own use, contrary to the rights of the defendants, and also converted to their own use the implements and other plant-growing utensils of the plaintiff and thereby broke up and destroyed the business of the plaintiff, then they shall find damages for the plaintiff; and the jury are further instructed that in assessing said damages they may take into consideration (1) the value of the improvements put on the premises by the plaintiff; (2) the special damages which the evidence shows the plaintiff to have suffered, including any damage done to its personal property; and (3) the damages done to the business of the plaintiff.

*R. R. Hicks,* for the plaintiff in error.

*Cole & Abbot* and *Wilcox, Cooke & Wilcox,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

On the 24th day of February, 1912, F. F. Nash and F. P. Stras, by deed leased to one Frank Brunton for a term of five years a certain farm of ninety-eight acres situated in Princess Anne county, Virginia, on an annual rental, to be paid as set

forth in the deed of lease, which provided that the lessee should pay the rent and all taxes, etc., on the property during the term of the lease, and that the lessee "will not assign nor sublet said premises without leave given in writing of said lessors . . .; that all improvements of whatsoever kind or nature made to or put upon the said premises by said lessee . . . during said term, whether buildings, hotbeds, sash, hothouses or otherwise, shall be and remain as a part of said premises, and shall be, belong and pass to said lessors for their own absolutely at the expiration of the said term, or other sooner determination of said term; and that said lessors may thereupon immediately re-enter and peaceably repossess, as their former estate, the said premises upon the default in the payment of rent or for breach of covenant." The only other feature of this contract that need be adverted to is: "It is further understood and agreed between the parties hereto that the said party of the second part shall have the right to purchase the said property, at any time before the expiration or sooner determination of said term by breach of covenant, by the payment to said parties of the first part the sum of $7,000.00 cash and the payment of the *pro rata* rent to the date of exercising said option; and notice to exercise this option shall be given in writing to said parties of the first part."

Brunton, the lessee, entered into possession of the leased premises under the lease, for the purpose, as the lessors knew, of establishing thereon a plant farm. He had no capital, and in the spring of 1912 interested Admiral A. C. Dillingham (a retired naval officer) in his enterprise to the extent that Admiral Dillingham advanced to him the sum of $2,000 under a verbal understanding that he (Admiral Dillingham) should have an interest in the profits of the operation of the plant farm. Soon thereafter more capital was required, and Admiral Dillingham induced his brother, Frank C. Dillingham (a retired capitalist) to invest additional sums of money in the undertaking. Subsequently, in order to acquire all needed

capital and to obtain the best possible results from the operation of the farm, the Franklin Plant Farm corporation was formed, having as its stockholders, directors and officers Brunton (the lessee of the farm), Admiral Dillingham and his brother, Frank. The lessors of the farm, Nash and Stras, were aware of the formation of this corporation and encouraged it. They knew that while Brunton was without capital with which to operate the farm, the Dillinghams were possessed of large means: that the operations on the farm would improve their property, and that the firm of C. A. Nash & Son, doing business in Norfolk city (of which Nash and Stras were the owners and managers), through the purchase by the Franklin Plant Farm corporation of hotbed sash and other supplies necessary to the conduct of the plant-growing business in which the corporation proposed to embark, installing an irrigation plant as well as many hot-beds, sash and other paraphernalia required in the conduct of such a business, would profit largely. It was also the purpose of these incorporators, of course, to take over by assignment the lease of the farm held by Brunton; and it was at that time observed by the attorney of the Messrs. Dillingham that the lease had not been signed by the wife of either lessor, whereupon said attorney, in company with Admiral Dillingham, called to interview the lessors, Nash and Stras, and explained to them the plan of organization of the corporation to take over the farm from Brunton, and also explaining that the corporation was unwilling to take over the farm until the wife of each of the lessors had signed the lease; that large expenditures of money would be required on the premises, and in all probability the option to purchase the farm, as provided for in the lease, would be taken advantage of, hence the necessity of the signatures of the wives of the lessors to the lease; that the provisions in the lease that all improvements should become the property of the lessors, in the event of a determination of the lease, was severe; and that the corporation wished some modification of the lease in that particular. Stras, with whom this conversation was had,

said this would be satisfactory, and the contract of lease was left with him so that his wife and the wife of Nash might sign and acknowledge same, and so that it might be modified with reference to the ownership of the improvements, etc. The time for putting in improvements was then pressing, and upon the assurance of Stras, as stated, the Messrs. Dillingham determined to advance to the corporation sufficient money to equip the farm, and accordingly then and there purchased from C. A. Nash & Son, hotbed, sash, etc., to the amount of something over $1,000, and entered into contracts for the installation of irrigation plants and other improvements, C. A. Nash & Son, acting through said lessors, Nash and Stras, delivering said hotbed sash to the Franklin Plant Farm, Inc., on the premises, rendering their bill to the corporation, which was paid out of money advanced it by the Messrs. Dillingham.

Some weeks afterwards Nash and Stras returned the contract of lease duly signed and acknowledged by their respective wives, but Stras advised the attorney for the corporation that Nash was unwilling to modify the lease with reference to improvements, which was not regarded as of much importance, in which conversation, according to Stras' version of it, he stated to said attorney: "I talked with Nash and Nash said: 'We want the whole contract just as it is,' and I so told Ranny Hicks and he finally said that they would take it, then he said he would prepare a paper for us to sign, transferring this (the lease) to the Franklin Plant Farm, which he never did."

On the 25th day of August, 1912, Brunton, by deed, assigned and transferred to the Franklin Plant Farm, Inc., the premises held by him under the said lease containing this provision: "Said lease from Stras and Nash to Brunton is hereby referred to and made a part hereof as fully as if copied herein."

The operations of the corporation were then vigorously pushed, the dwelling on the farm was repaired, large stables erected, irrigation plants installed, hotbeds constructed, packing house constructed, pumps installed, grain house erected,

needed implements purchased, and the ground thoroughly drained and the farm stocked, all of which improvements cost $20,000, so that in January, 1913, the plant was well equipped and made ready for the ensuing spring business.

Up to this time Admiral Dillingham and his brother had advanced to the corporation approximately $20,000, but it was found necessary to have a working capital, and to that end the corporation borrowed $3,000 from a bank in Norfolk city, securing the loan by a deed of trust executed on the 16th day of January, 1913, by the corporation in its corporate name, to R. Randolph Hicks, trustee, which deed conveyed the leasehold interest in the property as well as stock, implements, etc., thereon, to secure the payment of said loan evidenced by note of the corporation of even date with the deed of trust, payable four months after date.

It appears that after the execution of this deed of trust some friction arose between Admiral Dillingham and Brunton, president of the corporation, growing out of the discovery by the former that the operation of the farm by the latter was being conducted on an extravagant scale, in that Brunton was attempting to expend excessive sums of money; whereupon, Admiral Dillingham determined not to make further advances and to get rid of Brunton. As a result, when said note fell due on the 16th of May, 1913, it was not paid, and the bank instructed the trustee to advertise the property for sale, which the trustee did, the sale to take place on the 18th day of July, 1913. On July 14, 1913, Nash and Stras took possession of the farm and all improvements thereon, appropriating the same to their own use, employing Brunton as their agent to keep Admiral Dillingham off the premises, which entrance upon the premises by Nash and Stras it is charged by the corporation was taken by force and violence, the Admiral being an elderly man, and Brunton a young man and his physical superior, and this entry was made notwithstanding the rent for the premises had been paid by the Messrs. Dillingham up to January 1, 1914.

Nash and Stras having thus appropriated to their own use the farm and the improvements put thereon by said corporation, leased the same to a Miss Blick at an increased rental, and she entered upon the leased premises and began the operation of the farm and the business that had been installed thereon by the said corporation, for her own benefit, with Brunton as her manager.

It does not appear that Nash and Stras knew of the existence of the deed of trust until after the advertisement of the sale thereunder by the trustee, but they did know of the assignment by Brunton of his lease to the said corporation, and assented to the assignment, as shown by the following letter:

"Norfolk, Va., May 16, 1913.
"Franklin Plant Farm, Inc.,
        City.
"Gentlemen:—Kindly have the insurance policy which you carry on your residence on your farm sent to us, as we have a loan on the farm and the bank demands this policy as collateral. Kindly give this your prompt attention and oblige,
        "Yours very truly,
                "Nash & Stras."

Possession of the leased premises, together with all the improvements that had been installed thereon, having been taken by the lessors, Nash and Stras, in the manner above stated, the Franklin Plant Farm, Inc., brought this action of trespass on the case against them to recover damages alleged to have been sustained by the plaintiff as a result of the said acts of the defendant, and at a trial of the cause the jury rendered a verdict for the defendants, which verdict the court refused to set aside and entered judgment thereon, to which judgment this writ of error was awarded.

Of the errors assigned in the petition for the writ of error, three relate to the rulings of the court in the granting and

refusal of instructions to the jury, and the remaining assignment is to the refusal of the court to set aside the verdict of the jury and grant the plaintiff a new trial, on the ground of error in the rulings of the court in giving and refusing instructions, and for the want of evidence to sustain the verdict.

The court gave for the defendant, over the objection of the plaintiff, four instructions, B, D, E and F (which appear in the statement of the case), these instructions being, as the plaintiff contends, equivalent, under the facts above set out, and practically not controverted, to an instruction to find for the defendant. The court also gave, of its own motion, instructions designated as 4 and 5 (which also appear in the statement), and refused· to give the following instructions asked by the plaintiff:

"The court instructs the jury that the deed of trust to R. R. Hicks, trustee, shown in evidence, was not in itself a violation of the clause in the lease prohibiting assignment by the lessee. In order that said deed of trust should operate as such an assignment, the jury must believe that the trustee or his assignee actually took possession of the premises described in the lease.

"The jury are further instructed that should they believe from the evidence that the defendants committed the acts complained of in the declaration, and that said acts were committed wantonly and maliciously in order to illegally get possession of the premises described in the declaration, then the plaintiff is entitled to recover not only the determinable money loss which the evidence may show it sustained, but such exemplary and punitive damages as in their opinion are called for by the circumstances of the case, and the jury are instructed that punitive or exemplary damages are damages which are allowed when one party has injured the other in a wanton, willful and oppressive manner in disregard of his rights, as a warning to him and other persons to prevent them from committing like offenses in the future.

"The jury are instructed that the deed of trust from the

Franklin Plant Farm, Inc., to R. Randolph Hicks, trustee, upon the leasehold interest in the real estate, was not such an assignment thereof as violated the provisions against assignment set out in the contract of lease exhibited in evidence. In order that said deed of trust should act as such an assignment, it was necessary that there should have been not only a sale under the deed of trust, but that the purchaser at the sale should have complied with the terms of the sale, and if the jury believe from the evidence that the said sale was never consummated and that the purchaser never was in a position to take possession, then there was no such assignment as inhibited in the contract of lease."

It is readily to be observed that the contention of the plaintiff in the court below was, and is here, that the clause in the lease to Brunton restricting assignments and subletting of the leased premises, was not a continuous covenant, but a single covenant, which once waived by the lessors could not thereafter be retracted, and the trial court, as it will be seen upon reading its instruction No. 4, expressly told the jury that if Brunton assigned the lease to the plaintiff, and the defendants, with knowledge of that fact, accepted rent, or permitted the plaintiff to expend money in improving said property, then such conduct on the part of the defendants was a waiver of the condition as to the assignment so far as the assignment to the plaintiff was concerned, and further, that if the defendants once waived said condition, they thereupon discharged said condition, but the court, in view of the evidence as to what passed at the interview between Stras, on the one hand, and attorney Hicks and his client, Dillingham, on the other, with respect to the proposed assignment of the lease to the plaintiff, added to the instruction, and properly so, the following: "provided you believe the assignment to the corporation was made without limitations or conditions as to reassignments, in which event it had the right to assign said leasehold interest as if no condition to the contrary had ever been imposed, and the execution by it of a deed

of trust or other conveyance did not work a forfeiture of the lease, nor justify the defendant in re-entering and taking possession."

The evidence as to the interview between Stras, on the one hand, and Hicks and Dillingham, on the other, left little or no room to question, that when the interview terminated it did so with the terms of the proposed assignment by Brunton of his lease to the plaintiff unsettled, and that as soon as Nash was informed of that interview he declined to consent to any assignment of the lease which varied in any particular the original terms thereof, and there the matter rested, it seems, till after the leased premises were advertised for sale by Hicks, trustee, when the defendants re-entered upon the premises and ousted the plaintiff of its possession thereof.

Summarized, the undisputed facts are that the leasehold interest in question was assigned to the plaintiff with the knowledge and consent of the defendants, and in order to effectuate it they had their respective wives to sign it, by reason of the statement of the attorney for said corporation that the company would not take the assignment unless the respective wives of the defendants did sign the original lease; that the defendants, with knowledge that the assignment had been made, accepted the rent stipulated for in the lease from the plaintiff for a period extending over a year, and gave it receipts for the rent; that they still retain the rent so paid for the months intervening between July, 1913, and January, 1914, during which period they had forcibly taken possession to their own use of the leased premises and the improvements, etc., that had been put thereon by the plaintiff; that they allowed the plaintiff to insure the buildings on the farm and requested it to pay the premium on the insurance; that they sold hotbed sash to the plaintiff to an amount exceeding $1,000, which was paid for by the plaintiff upon the delivery of the sash to it on the leased premises, and then, within a few months, forcibly ejected the plaintiff from the leased premises and appropriated, not only the premises,

but all the improvements, etc., including said hotbed sash, to their own use, which improvements involved expenditures by the plaintiff amounting to several times the value of the farm when leased to Brunton. It is also to be taken as true, however, upon the evidence in the case, that while the defendants should be held as having by their express or implied assent authorized the assignment by Brunton to the plaintiff of his unexpired term of the lease in question, and were, therefore, not entitled to re-enter upon the leased premises and dispossess the plaintiff of the same, by reason of that assignment, the defendants had not consented to the assignment, except upon the same terms and conditions as the original lessee (Brunton) had agreed to, viz., "that he will not assign or sublet said premises without leave given in writing by said lessors." So that the crucial question in the case for decision is whether or not the execution and delivery of the deed of trust by Brunton's assignee, the plaintiff, to Hicks, trustee, securing the payment of the debt of $3,000, as above stated, was such an assignment of the leasehold as was inhibited by the covenant in the original lease to Brunton, that he would not assign or sublet the premises, etc., and operated as a forfeiture of the lease and clothed the defendants with authority to re-enter and repossess themselves of the demised premises immediately upon ascertaining that fact, and before a sale under the deed of trust and a transmutation of the possession of the premises by reason of such sale.

This question is, so far as we are advised, one of first impression in this State, and, in view of the facts in this case, presents, as counsel for the plaintiff suggests, a rather novel aspect. It is nowhere suggested in the record that the execution and delivery of the deed of trust upon the leasehold and other property by the plaintiff, merely to secure the payment of a debt, in any way operated as a wrong or an injury to the defendants, the lessors of the leased premises. No sale had been made under the trust deed, and, therefore, no change of possession under it had taken place when the lessors forcibly re-

entered and dispossessed the plaintiff and appropriated the premises, together with all the improvements, etc., put thereon by the plaintiff, not only with knowledge of the transfer of the lease by Brunton to the plaintiff, but after they assented thereto and profited thereby.

An assignment or the subletting of leased premises necessarily carries with it the right of possession of the premises to the assignee or subtenant, but such is not the case where the lessee in the original contract, or his transferee, merely executes a deed of trust upon the leasehold to secure the payment of a debt. Certainly there is an important distinction between the assignment or subletting of leased premises and the execution of a deed of trust thereon securing the payment of a debt, where the trustee, as in this case, is given no right of possession, no control over the demised premises, no right to the rents and profits accruing from the operation of the farm, no rights of property therein, all of which rights are, under the express terms of the deed, reserved to the grantor; so that the deed conferred upon the trustee the bare legal title to the property conveyed, seized with no beneficial interest therein, and clothed with no authority to enter upon the premises or to take possession thereof.

The deed of trust, which dispenses with the necessity of a foreclosure suit, has almost entirely taken the place in this State of a mortgage as a security for the payment of a debt. The authorities seem to hold with unanimity that a mortgage is never construed as such an assignment of a leasehold interest as to cause a forfeiture under a covenant in the lease prohibiting assignment, unless it be that the mortgagee has an absolute right to enter on the property or to sell the estate of the lessee in the leasehold, and actually exercises such authority. Taylor on Landlord and Tenant, sec. 406; Underhill on Landlord and Tenant, secs. 607, 627; *Riggs* v. *Purcell,* 66 N. Y. 200; *Krouse* v. *Mitchell,* 130 Mich. 347, 90 N. W. 32, 97 Am. St. Rep. 479.

In the opinion of the court in *Riggs* v. *Purcell, supra,* it is said: "The giving of the mortgage was not a violation of the covenant. A mortgage in this State of land is not a transfer of the legal title, or the possession, but a mere security. (*Trimm* v. *Marsh,* 54 N. Y. 599 (13 Am. Rep. 623). It has been held in several cases in England that such a covenant is not violated by a delivery of the lease as a security for money loaned, and yet such a delivery operates as an equitable mortgage of the term created by the lease. (Taylor's Landlord and Tenant (2d Ed.) 406; Plat on Leases, 258; *Doe* v. *Hogg,* 4 Dowl & Ry. 226; *Doe* v. *Bevan,* 3 Maul. & Sel. 353). In *Doe* v. *Hogg* there was a covenant 'not to let, sell, assign, transfer, set over or otherwise part with the premises demised in the lease' of a coffee-house. The lessee deposited the lease with a brewer as security for beer supplied to the house, and it was held that the covenant was not violated. Abbott, Ch. J., said: 'I am clearly of opinion that the effect of the covenant is only to restrain the lessee from completely alienating the legal interest in the premises to the prejudice of the landlord without his consent in writing.' In *Doe* v. *Beavan* there was a similar covenant and the lessee deposited his lease as a security for money borrowed, and became bankrupt, and the lease was sold under the direction of the chancellor to pay that debt, and it was held that the lease was not forfeited. It is, therefore, clear that this lease was not forfeited by the giving of the mortgage, which did not transfer the title to the premises or the lease."

In *Krouse* v. *Mitchell, supra,* the Court of Appeals of Michigan held that a condition in a lease prohibiting its transfer or assignment, was not violated by an assignment of the leasehold interest as security for an indebtedness.

"A deed conveying land to a trustee as mere collateral security for the payment of a debt when due, and with power to the trustee to sell the land and pay the debt in case of default on the part of the debtor, is a deed of trust in the nature of a mortgage." *Sandusky* v. *Farish,* 40 W. Va. 150, 38 S. E. 563.

The court in that case defines the nature of a deed of trust, viewing it in the same light as a mortgage is to be viewed, viz., as a mere security for the payment of a debt, and clearly the terms under which a trustee holds the bare legal title to the leasehold for the purpose of securing payment of a debt are essentially different from the terms under which the grantor in a deed of trust conveying a leasehold holds from his lessor. In an assignment of the leasehold the lessor still has the same rights against the assignee as he has against his original lessee, while this is never the case under a deed of trust to secure debts, such as the one given in this case, for the trustee has no absolute right whatever in the premises, and if default is made in the payment of rent, the lessor would have his remedy against the grantor in the deed of trust, but would have no remedy against the trustee named in the deed where the trustee has no right to the possession; in fact, no right or remedy reserved to the lessors by the terms of the original lease is taken away or interfered with by the execution and delivery of the trust deed, nor could there have been, under the terms of the deed, a transmutation of the possession of the leased premises prior to a sale made by the trustee under the terms of the trust, after default made by the grantor in the payment of the debt secured, in which event only could the trust deed operate as an assignment of all the rights, title and interest of the grantor in the leasehold, absolutely, to the trustee. No sale was made by the trustee in this instance, as has been observed, for the reason that before the time arrived at which the trustee could have made it, or placed a purchaser in possession of the premises, the defendants had forcibly entered upon the premises and ejected the plaintiff therefrom, possessing themselves of all the improvements placed on the premises, a large portion of which had been, in the first instance, bought from the defendants, and had completely destroyed the business which the plaintiff had established and was conducting upon the leased premises.

In the case of *Bowser* v. *Colby,* 1 Hare 109, it was held "that

equitable agreements charging the property comprised in a lease, but not accompanied with a change in the possession or other alterations in the property, did not work a forfeiture of a lease in equity, notwithstanding there is a clause in the lease against assignment."

It is conceded in this case that forfeitures are not favored in law, and while the proceeding in the case last cited and quoted from was in equity, the reasoning of the court in that case, as well as in the other authorities we have cited, applies equally as well to the facts in the case we are here considering, and we are of opinion that the trial court should have instructed the jury, at the request of the plaintiff, that the execution and delivery of the deed of trust from the plaintiff to Hicks, trustee, conveying the leasehold interest in the real estate in question, was not such an assignment thereof as violated the provisions against assignment contained in the contract of lease exhibited in evidence; that in order that said deed of trust could act as such an assignment, it was necessary that there should have been not only a sale under the deed of trust, but the purchaser at such sale should have complied with the terms thereof, thereby entitling him to enter in possession of the leasehold insofar as the authority of the trustee in the deed of trust could license him to do so; and that if the jury believed from the evidence that said sale was never consummated and a purchaser thereof put in position to take possession of the leased premises, there was no such assignment as was inhibited in the lease.

The court, instead of instructing the jury on the question of damages, as requested by the plaintiff in its first instruction, set out above, gave its own instruction, numbered 5, which appears in the statement of the case. We are of opinion that in the instruction the court rightly instructed the jury as to the measure of the damages, if any, that the plaintiff was entitled to recover in the case for the determinable money loss which the evidence showed it had sustained, but failed

to direct the jury to the consideration of the evidence in the case tending to prove such facts as would entitle the plaintiff to recover, not only compensatory damages, but exemplary or punitive damages, by reason of the wanton, willful and oppressive manner in which the defendants secured the possession of the leased premises described in the declaration, totally disregarding the rights of the plaintiff.

Upon the facts which the evidence tended to prove, the plaintiff was unlawfully dispossessed of the leased premises in question, and the permanent improvements, as well as the implements and other plant-growing utensils put thereon by the plaintiff, and if the jury, by their verdict, had so found, the plaintiff would have been entitled to recover damages for its injuries as stated in the court's instruction No. 5, *supra;* but the evidence, as we view it, also tended to prove a case for exemplary or punitive damages, and that feature of the case should also have been submitted to the determination of the jury.

"A tort committed by mistake in the assertion of a supposed right, or without any actual wrong intention, and without such recklessness or negligence as evinces malice or conscious disregard of the rights of others, will not warrant the giving of damages for punishment, where the doctrine of such damages prevails." Suth. on Dam. (2d Ed.), sec. 383; *N. & W. Ry. Co.* v. *Neely,* 91 Va. 539, 22 S. E. 367; *Burruss* v. *Hines,* 94 Va. 413, 26 S. E. 875.

"The general rule in awarding damages is to give compensation for the pecuniary loss—to make amends or reparation for the injury inflicted. The plaintiff is entitled to recover all such damages as are the natural and proximate results of the wrongful act complained of." *Raven Red Ash Coal Co.* v. *Herron,* 114 Va. 103, 75 S. E. 752.

But where the wrongful act is done with a bad notice, or with such gross negligence as to amount to positive misconduct, or in a manner so wanton or reckless as to manifest a willful

disregard of the rights of others, the plaintiff in an action to recover damages resulting from such wrongful act is entitled to recover not only the determinable money loss which the evidence shows he has sustained, but such exemplary and punitive damages as are called for by the circumstances of the case, and, therefore, the jury in this case should have been instructed as to the measure of the plaintiff's damages, as it asked the court to instruct them. *Peshine* v. *Shepperson,* 17 Gratt. (58 Va.) 472, 94 Am. Dec. 468; *Dangerfield* v. *Thompson,* 33 Grat. (74 Va.) 150, 36 Am. Rep. 783; *N. & W. Ry. Co.* v. *Neely, supra,* and authorities cited.

The remaining assignment of error is to the refusal of the court to set aside the verdict of the jury because contrary to the law and the evidence, and need not be considered, as the case, for the reasons stated, has to be remanded for a new trial therein in accordance with the views expressed in this opinion.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed.*