# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## TURK V. MARTIN.

### November 14, 1918.

1. ASSAULT AND BATTERY—*Defense of Property Rights.*—In an action
for damages for personal injuries resulting from an alleged
felonious assault, defendant contended that he struck plaintiff
in defense of his property rights, and that plaintiff at the time
was in the very act of stealing potatoes from him, but the
evidence plainly showed that the real occasion of the assault
was plaintiff's alleged offensive language and bearing at the
time, and his alleged previous misappropriation of the products
of defendant's farm upon which plaintiff was employed.   By
defendant's own statement the difficulty was not precipitated
by an attempt to recover his property, but was occasioned by
plaintiff cursing him and by plaintiff's previous conduct.

   *Held:* That viewing the evidence in its most favorable light for
   defendant, there was nothing in it to support any theory of
   justifiable assault.

2. ASSAULT AND BATTERY—*Defense of Property Rights—Character
of Plaintiff's Occupancy of Defendant's Farm.*—In the instant
case plaintiff occupied defendant's farm, and the trial court
refused an instruction setting forth defendant's theory that
plaintiff was not his tenant. It appeared from the evidence
that defendant may have struck plaintiff because he believed
that his propert yrights had been violated, but there was no
ground upon which he could plausibly contend that he had
to commit the assault in order to protect his property or to
save himself anything belonging to him which might be lost if
he did not make an attack upon the person of the plaintiff.
Therefore the materiality of the character of the plaintiff's
occupancy was eliminated and it was not error to refuse the
instruction.

3. ASSAULT AND BATTERY—*Exemplary Damages.*—In an action for
assault the jury were instructed that "if the defendant made a
premeditated, wilful or malicious assault upon the plaintiff,
then the jury *should* award the plaintiff punitive damages."

It was contended that whether punitive damages should be awarded or not is always a question for the jury, and that the court ought to have used the word "may" instead of the word "should" in the instruction. The Supreme Court of Appeals was of opinion that the proper practice in such cases is to use the word "may" instead of "should," "ought to" or "must." But in the instant case the instructions, as a whole, could not have substantially prejudiced the defendant, and presented no reversible error.

4. ASSAULT AND BATTERY—*Exemplary Damages.*—The weight of authority is to the effect that exemplary damages are not recoverable as a matter of right, and should be left to the discretion of the jury, and while the Supreme Court of Appeals in the instant case does not go so far as to adopt the minority rule that such damages are a matter of right when plaintiff in an action of tort proves a wanton, wilful, or malicious violation of his rights, yet the difference between the majority and minority rule is, after all, rather narrow, and may often be wholly unimportant. The verdicts of juries will in most cases be the same under either rule. Both rules leave entirely to them (1) the existence of the elements necessary to the award of exemplary damages, and (2) the amount to be awarded on that account. These are the more vital considerations, and as to these the instructions in the instant case were sufficiently safeguarded.

Error to a judgment of the Circuit Court of Augusta county, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*R. S. Turk* and *Charles Curry,* for the plaintiff in error.

*Jos. A. Glasgow,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This action was brought by J. F. Martin to recover dam-

ages from R. S. Turk for personal injuries resulting from an alleged felonious assault. There was a verdict and judgment for the sum of $500 in favor of the plaintiff, and the defendant thereupon obtained this writ of error.

[1] Martin had been employed by Turk to work on the latter's farm near Staunton. He lived in the farm house. There is some dispute as to whether, in a technical sense, he was occupying the house as a "tenant," but this, as we shall presently see, is an immaterial question. After Martin had lived on the place and worked for Turk for several years with mutually satisfactory results, Turk was led to believe that Martin was acting dishonestly in his account of the proceeds and products from the farm. That whole matter, from the standpoint of each party, was fully developed before the jury but need not be gone into in any detail here. Suffice it to say that on the day of the assault, Turk drove out to the farm to settle with Martin, who, as a result of the differences which had arisen between them, was arranging to move away. When Turk got there, he became engaged in an altercation with Martin about some potatoes in the cellar. He claimed that they were his, and Martin declined to let him have them. Just what passed between them in this altercation is a subject of conflict; but the exchange of words between them was concluded by a statement on the part of Turk that he was going to have the potatoes, and a threating warning from Martin that Turk must not come in the yard. Thereupon Turk entered the yard, started toward the cellar door, which was open, and Martin closed the door and attempted to lock it. As he did this, with his side or back towards Turk, the latter struck him several blows over the head with a pistol. These blows resulted in several gashes on Martin's head, and would have knocked him down but for the fact that he fell over against the wall of the house. He was not rendered unconscious, and was able in a few seconds to walk up on the porch.

He at no time made any effort to strike Turk, and upon a careful review of the evidence, we entirely concur with the judge of the circuit court in his finding, as set out in his written opinion, that nothing which was said or done by Martin justified the assault. The case is one in which the plaintiff was entitled, upon the defendant's own statement, to recover, as a matter of law, such damages as the jury, upon proper instructions, should award.

We do not overlook the contention of the defendant, Turk, that he struck Martin in the defense of his property rights, and that Martin, at the time, was in the very act of stealing from him the potatoes. A sufficient answer to this contention is, that the evidence plainly shows that the real occasion of the assault was Martin's alleged offensive language and bearing at the time, and his alleged previous misappropriation of the proceeds of wood, hogs and other products of the farm; and that the potatoes were a minor consideration. Turk himself says that he went there to collect money from Martin for other things and that he "never had expected to bother about the potatoes." He testifies further: "Well, if there had been nothing but seed potatoes between me and Martin he could have taken them and gone on with them, but I said to him, 'if there are any seed potoes in that cellar I am going to have them,' not meaning to go after them myself at all, and he said to me as savage as he could say it, 'God damn you, don't you come in this yard, if you do I will fix you.' I just said, 'I will be there as quick as I can get there,' and started right up along the fence to get to that gate, that goes in, and he was on one side and I was on the other. I honestly thought he was going to try to stop me from going in there, but he didn't. The spring house sits there, and he turned and went around that way. I was not far behind him. He went as fast as he could to the cellar door, slammed it shut in my face and locked it and as he did so I struck him—right on the side

of the head.  He bent over, and it didn't make any differ-
ence to me where I hit him.  I just hit him as soon as I
got to him.  I just wanted to let him know that he couldn't
talk to me that way around there and shut me out of my
property.  When he rose up I could see that I had hurt him
because he kind of sickened, and got white, and I hit him a
second time and probably a third, and his wife was looking
out of the window and she yelled when I hit him." Again,
he testifies as follows:

"Q. But you determined to teach him a lesson, is that it?

"A. Yes, I knew he thought he could bulldoze me and do
what he pleased with my property and I meant to prevent
it.

"Q. And you were going to teach him a lesson?

"A. Yes, sir, that he could not deprive me of my property
rights.

"Q. And you hit him twice while his back was to you?

"A. No, only once as he was locking me out of the cellar.

"Q. You knew that you had no right to hit him with
something in your hand, didn't you?

"A. No, sir, I took the chance, as I had the right to do in
defense of my rights and I am going to stand by it.

"Q. And you say that while you could have killed him you
hit him a staggering blow?

"A. Yes, sir, I intended to stagger him as I believed it
necessary to stop him.

"Q. And when he raised up you hit him another blow?

"A. Yes, sir."

After reviewing the voluminous evidence much more fully
than we have done, the learned judge of the circuit court
sums up the situation as follows: "So that by his own state-
ment the difficulty was not precipitated by an attempt to
recover his property, but was occasioned by Martin cursing
him and by Martin's previous conduct as he understood
it.  This, of course, does not justify an assault."  We con-

cur entirely in this conclusion from the evidence. Viewed in its most favorable light for the defendant, there is nothing in it to support any theory that in law would have justified the assault; and the only reviewable question in the case is whether the court erred in any of its rulings upon the admission or exclusion of evidence and instructions to the jury.

The errors assigned related (1) to the admission and exclusion of certain evidence; (2) to the giving and refusing of certain instructions; and (3) to the refusal of the court to set aside the verdict of the jury. .

The first of these assignments, although seriously insisted upon, is of minor importance because the evidence respectively admitted and excluded would not have affected the right of recovery, and, in all probability, would have had very little effect upon the amount of the verdict. The action of the court in respect thereto involved no new questions of evidence, was plainly right upon well settled rules, and does not call for any discussion.

The third assignment is necessarily embraced in the second, because the ground insisted upon here in support of the motion to set aside the verdict is that the court erred in its refusal to instruct the jury upon the defendant's theory. The final question, therefore, is, was there any error in the instructions?

Instruction number 6, asked for by the defendant and refused, is the one which undertook to set forth in full the theory of the defendant, including the claim that Martin was not Turk's "tenant"; but in its final analysis this instruction rests upon the assumption that there was evidence tending to show that the assault was committed *in the defense of property rights*. We have already seen that this assumption is not supported by proof. Turk may have struck Martin because he believed that his property rights had been violated, but there is no ground upon which he

can plausibly contend that he had to commit the assault in order to protect his property or to save himself anything belonging to him which might be lost if he did not make an attack upon the person of the plaintiff. This eliminates the materiality of the character of Martin's occupancy or tenancy of the house.

[2] Since the jury could not properly have found any other than a verdict for the plaintiff, we need not further discuss the instructions given and refused, in so far as they relate to the plaintiff's right to recover compensatory damages. (*C. & O. Ry. Co.* v. *Harris,* 103 Va. 635, 643, 49 S. E. 997, and cases cited.)

[3, 4] This brings us to the only debatable question in the case. It affects the measure of damages and arises out of instruction number 4, given for the plaintiff, as follows: "The court instructs the jury that though they may believe that the defendant had probable cause which justified him in charging the plaintiff with larceny of his property, and in prosecuting him therefor, yet if the defendant made a premeditated, wilful or malicious assault upon the plaintiff, then the jury should award the plaintiff punitive damages."

It is insisted that this instruction was wrong, because it told the jury that "if the defendant made a premeditated, wilful or malicious assault upon the plaintiff, then the jury *should* award the plaintiff punitive damages." The argument here made is that whether punitive damages should be awarded or not is always a question for the jury, and that the court ought to have used the word "may" instead of the word "should" in the instruction.

A general rule upon this subject, and one which is in harmony with *all the authorities,* is stated in 13 Cyc. 118, as follows: "In all cases in determining whether exemplary damages shall be awarded, the question as to gross negligence or the wilfulness or wantonness of the act should be left to the jury. Whether the evidence in a case tends to

warrant exemplary damages is a question for the court to determine in its instructions, but the sufficiency of the evidence to establish such facts is a question for the jury."

It will be observed, however, that the rule, as thus stated, leaves open the question whether such damages, like purely compensatory damages, are recoverable as a matter of right. It is this latter question which is here directly involved, and upon it the authorities are in conflict. As is said in 12 Am. & Eng. Enc. L. (2d ed.), at page 52, "on the extent of the jury's discretion the authorities are not agreed further than that *the existence of the elements requisite* to the allowance of exemplary damages is in general a question for the jury." (Italics added.)

In 2 Sutherland on Damages (4th ed.), page 1309, section 403, the author says: "It is for the court to determine whether the evidence tends to show facts which warrant exemplary damages; the sufficiency of facts is for the jury. There is a difference of opinion as to whether damages for punitory effect can be claimed as a matter of right."

It is undoubtedly true, however, as recognized in the section above cited in Sutherland on Damages, that the weight of authority is to the effect that exemplary damages are not recoverable as a matter of right, and should be left to the discretion of the jury. 12 Am. & Eng. Enc. L. (2d ed.), page 51; 8 R. C. L., page 592; 12 Ann. Cas., note, page 574.

The minority rule is adopted, in a strong opinion, in *Mayer* v. *Duke*, 72 Tex. 445, 10 S. W. ʻ565, followed by *Nolan* v. *Mendere* (6 Tex. Civ. App. 203), 25 S. W. 28.

In *Beaudrot* v. *Southern Ry. Co.*, 69 S. C. 160, 48 S. E. 106, the court said: "Punitive damages have now come, however, to be generally, though not universally, regarded not only as punishment for wrong, but as vindication of private right. This is the basis upon which they are now placed in this State. When this is once admitted * * *

it logically follows that the plaintiff is entitled to such
damages when under proper allegations in an action of tort
he proves a wanton, wilful, or malicious violation of his
rights."

No case appears to have hitherto arisen in Virginia
which presents the question exactly as it confronts us here.
The decisions in this State appear to have placed exem-
plary damages upon much the same footing as compensa-
tory damages.

In *Borland* v. *Barrett*, 76 Va. 128, 134, (44 Am. Rep. 152),
Judge Staples, speaking for this court, said: "Such damages,
although sometimes denominated vindictive, are in their na-
ture compensatory as much as those given for bodily pain,
loss of time, and expense incurred." And in the recent case
of *Franklin Farm* v. *Nash*, 118 Va. 98, 115, 86 S. E. 836, 842,
Judge Cardwell, delivering the opinion of the court, said:
"But where the wrongful act is done with a bad motive, or
with such gross negligence as to amount to positive miscon-
duct, or in a manner so wanton or reckless as to manifest a
wilful disregard of the rights of others, the plaintiff in an ac-
tion to recover damages resulting from such wrongful act is
entitled to recover not only the determinable money loss
which the evidence shows he has sustained, but such exem-
plary and punitive damages as are called for by the circum-
stances of the case, and, therefore, the jury in this case
should have been instructed as to the measure of the plain-
tiff's damages as it asked the court to instruct them." In
that case, the plaintiff had requested the court to give the
following instruction:

"The jury are further instructed that should they be-
lieve from the evidence that the defendants committed the
acts complained of in the declaration, and that said acts
were committed wantonly and maliciously in order to ille-
gally get possession of the premises described in the decla-
ration, then the plaintiff is entitled to recover not only the

determinable money loss which the evidence may show it sustained, but such exemplary and punitive damages as in their opinion are called for by the circumstances of the case and the jury are instructed that punitive or exemplary damages are damages which are allowed when one party has injured the other in a wanton, wilful and oppressive manner in disregard of his rights, as a warning to him and other persons to prevent them from committing like offenses in the future." It was this instruction which Judge Cardwell said should have been given. There is perhaps no very substantial difference between saying to the jury that where the elements for punitive damages have been established by the evidence they *should* award such damages, and telling them that under these circumstances the plaintiff *is entitled* to such damages. And while we do not mean in this opinion to go as far as the Texas and South Carolina cases have gone, the difference between the majority and minority rule is, after all, rather narrow, and may often be wholly unimportant. The verdicts of juries will in most cases be the same under either rule. Both rules leave entirely to them (1) the existence of the elements necessary to the award of exemplary damages, and (2) the amount to be awarded on that account. These are more vital considerations, and as to these the instructions in the instant case were sufficiently safeguarded. We do not wish to be understood as approving the particular instruction under review. Upon the contrary, we are of opinion that the proper practice in such cases is to use the word "may" instead of the words "should," or "ought to," or "must." In this case the instructions, as a whole, could not, in our opinion, have substantially prejudiced the defendant, and present no reversible error. The plaintiff's instructions 4 and 7, both of which told the jury that they "should" award punitive damages, were conditioned upon the jury's finding from the evidence that the proper elements existed. In addition to

this, in plaintiff's instruction number 10, the court said: "They may also add such a sum as punitive damages, if they think such damages should be recovered, as they may deem proper for the purpose of punishing the defendant, and of warning him and other persons and preventing them from committing like assaults in the future;" and the defendant's instruction number 3 was as follows: "The court instructs the jury that after the consideration of all the evidence in this case together they believe that the plaintiff has shown by a preponderance of the evidence to the satisfaction of the jury that he is entitled to recover some damages in this case, then the court tells the jury that they are the exclusive judges of what amount of damages they should give to the plaintiff, and they must determine this from the consideration of the injury to the plaintiff, if any, and from all the facts and circumstances of the case taken together."

Upon the whole case, we are of opinion that there was no error in the judgment complained of, and it must, therefore, be affirmed.

*Affirmed.*