# CIRCUIT COURT OF THE CITY OF ROANOKE

Sheryl H. Dodd

v.

Tammy N. Lang

June 29, 2006

Case No. CL02000760-00

BY JUDGE JONATHAN M. APGAR

This matter is before the Court on the parties' cross-motions in limine. For the following reasons, the plaintiff's motion is granted, and the defendant's motion is denied.

## Facts

On August 22, 2000, Sheryl Dodd, with her husband Eric riding in the passenger seat, was involved in an automobile collision with Tammy Lang in the City of Roanoke. Over the next few months, the Dodds each sought medical attention and incurred medical expenses. In July 2002, the Dodds brought separate motions for judgment against Lang alleging various theories of negligence in the operation of her vehicle.

Both cases are set for a consolidated trial on July 13 and 14, 2006. Sheryl Dodd has brought a motion in limine requesting this Court to allow her to introduce her medical bills at trial to establish both the monetary amounts and the non-monetary damages of pain, suffering, and inconvenience, despite being discharged in bankruptcy under Chapter 7. *See* 11 U.S.C. §§ 101-784 (2006). She seeks to introduce a total of $7,421.50 in medical bills. Pl.'s Supp. Mot. in Limine at 1. This includes: (1) $270.00 payable to RMH Emergency Services, (2) $668.75 payable to

Carilion Roanoke Memorial Hospital, (3) $241.00 payable to Radiology Associates of Roanoke, (4) $2,840.00 payable to Slakman Chiropractic Center, (5) $1,702.00 payable to Lewis Gale Medical Center, (6) $237.00 payable to Medical Imaging Specialists, (7) $135.00 payable to CHRV Emergency Services, (8) $1,231.25 payable to Carilion Roanoke Community Hospital, and (9) $96.50 payable to Weaver, Vascik, Kleiner & Harron. *Id.* at Ex. 1.

Dodd contends that the bills are admissible for their monetary values under the collateral source rule and that Lang should be prevented from mentioning the bankruptcy to the jury because it would prejudice her case. But even if the bills are not fully admissible under the collateral source rule, Dodd argues, they should be admissible to the extent that she executed an assignment of benefits to one creditor before the discharge and because of statutory liens that attach to any recovery pursuant to Va. Code §§ 8.01-66.2 to 8.01-66.12 (2006).

Lang objects, arguing that, because the health care providers may not be paid by operation of law, the plaintiff may not recover those amounts from the defendant. Lang further argues that reliance on the collateral source rule is misplaced because Dodd never received collateral payments, her debts were discharged, and she is no longer personally liable on the debts.

*Analysis*

### I. *The Bankruptcy Estate and Effects of the Discharge*

In March 2003, two and a half years after their collision with Lang, the Dodds filed a joint voluntary bankruptcy petition in the U.S. District Court for the Western District of Virginia seeking relief from their creditors pursuant to Chapter 7 of the Bankruptcy Code. One effect of the voluntary petition, of course, was to liquidate the Dodds' nonexempt pre-petition property into an estate to pay the claims of creditors according to federal bankruptcy law. *See* 11 U.S.C. §§ 301, 545(a).

In their petition, the Dodds claimed numerous exemptions to the bankruptcy estate pursuant to 11 U.S.C. § 522. These exemptions arise under Virginia law. Congress, pursuant to 11 U.S.C. § 522(b)(1), empowered the states to substitute their own exemptions for the uniform exemptions provided in 11 U.S.C. § 522(d). The General Assembly expressly opted out of the uniform exemptions according to the invitation of Congress in Va. Code § 34-3.1, and has provided its own exemptions to the

bankruptcy estate, several of which are implicated here. Among the claimed exemptions, the Dodds declared their personal injury claims against Lang as exempt pursuant to Va. Code §§ 34-4 and 34-28.1.

Va. Code § 34-4 is a general homestead exemption, which exempts up to $5,000.00 in assets from inclusion in the bankruptcy estate. Va. Code § 34-28.1 specifically exempts "all causes of action for personal injuries . . . and the proceeds from court award or settlement . . . from creditor process against the injured person." Neither the creditors, nor the bankruptcy trustee, objected to the exemption of the personal injury claim from the estate, thus making this claim exempt. The Supreme Court of the United States has held that where a creditor or trustee fails to file an objection to a claimed exemption within the required thirty-day period, the right to object is barred and the exemption stands. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44 (1992).

However, the personal injury claim exemption has a qualification. Though the claim may survive the discharge, so do certain statutory liens on any award or settlement pursuant to Va. Code § 8.01-66.2, so long as they are perfected before the filing of the bankruptcy petition. *See* 11 U.S.C. § 545(2) (requiring perfection of statutory lien to survive bankruptcy discharge); Va. Code § 8.01-66.5 (providing requirements for perfection of statutory lien under Code § 8.01-66.2). These include properly perfected liens of up to: (1) $2,000.00 for hospital services, (2) $500.00 for physician and physical therapy services, and (3) $200.00 for ambulance services, among others. *See Mains v. Hargett*, 43 Va. Cir. 109, 110 (Fairfax 1997) ("Statutory liens, unlike secured and unsecured debts, will not be discharged in a bankruptcy unless specifically excepted by federal statute.").

Pursuant to Va. Code § 8.01-66.5, perfection of these liens only requires (1) the service of written notice on the debtor or the debtor's attorney, (2) listing the names of both the debtor and creditor. In this case, five creditors served written notice on the Dodds or their attorney prior to the filing of the bankruptcy petition with the proper names listed and thus perfected their claims as required by Code § 8.01-66.5. *See* Supp. to Pl.'s Mot. in Limine at 1-2. Included are statutory liens, in the claimed amount, up to the cap for each type of service pursuant to Va. Code § 8.01-66.2, of: (1) Slakman Chiropractic Center for $500.00, (2) Carilion Roanoke Memorial Hospital for $676.28 (Pl.'s Ex. 4), (3) Carilion Roanoke Community Hospital for $1,245.83, (4) Emergency Services CHRV for $200.00, and (5) Emergency Services RMH for $200.00. The total of the statutory liens is $2,822.11. Notably, the lienholders mentioned larger amounts in some circumstances, such as for ambulance services, but, because Va. Code § 8.01-66.2 places caps on the lien

amounts, these values have been adjusted. These statutory liens survived the bankruptcy discharge pursuant to 11 U.S.C. § 545 and remain outstanding pending the resolution of the Dodds' claims in this case.

Additionally, Sheryl Dodd executed an assignment of benefits on one of the debts she owed to Lewis-Gale Medical Center in the amount of $1,702.00. This too, survived the bankruptcy discharge. The U.S. District Court for the Western District of Virginia in *In re Musser*, 24 B.R. 913, 919, 1982 U.S. Dist. LEXIS 15805 at **14-17 (W.D. Va. Nov. 15, 1982), presented with a virtually identical situation and interpreting Va. Code § 8.01-26, which is at issue here, determined that the assignment of the *proceeds* of a personal injury award, which are uncertain and contingent, survives a bankruptcy discharge, even though § 8.01-26 prohibits the assignment of personal injury *causes of action*. Va. Code § 8.01-26 provides:

> Only those causes of action for damage to real or personal property . . . and causes of action ex contractu are assignable. The provision of this section shall not prohibit any injured party or his estate from making a voluntary assignment of the proceeds or anticipated proceeds of any court award or settlement as security for new value given in consideration of such voluntary assignment.

In this case, Sheryl Dodd has executed a valid equitable assignment to Lewis-Gale of $1,702.00 on any *recovery* she may obtain in this litigation, not an assignment of her personal injury *cause of action*, prohibited by Va. Code § 8.01-26. The defendant attempts to distinguish Sheryl Dodd's equitable assignment in this case from the one in *In re Musser*. However, they are in fact nearly identical and no compelling reason has been suggested why this Court should depart from the federal court's rationale concerning Va. Code § 8.01-26. The assignment survives the bankruptcy and is in effect.

Therefore, regardless of the Dodds' bankruptcy discharge, several of the creditors maintain a statutory lien or equitable assignment on any jury award or settlement proceeds in this case. With that said, the question remains, to what extent should the plaintiffs be allowed to introduce the medical bills in evidence?

## II. *Admissibility of the Medical Bills*

Generally, injured plaintiffs, assuming liability is proven, are "entitled to recover all such damages as are the natural and proximate results of the wrongful act complained of," *Younger v. Appalachian Power Co.*, 214 Va.

662, 663 (1974) (quoting *Franklin Plant Farm, Inc. v. Nash*, 118 Va. 98, 115 (1915)), so as to be put as close to the position they were in before the injury. In this case, Dodd seeks to introduce her medical bills, or a summary thereof, to recover the monetary amounts as well as the non-monetary damages of pain, anguish, and inconvenience.

Litigants are generally "entitled to introduce all competent, material, and relevant evidence that tends to prove or disprove any material issue in the case, unless that evidence violates a specific rule of admissibility." *Barkley v. Wallace*, 267 Va. 369, 373 (2004) (citing *Tarmac Mid-Atlantic, Inc. v. Smiley Block Co.*, 250 Va. 161, 166 (1995); *Barnette v. Dickens*, 205 Va. 12, 15 (1964)). Here, the underlying question is whether Dodd maintains a substantive right to compensation on the medical bills, despite being discharged in bankruptcy, so as to be a "material issue in the case" permitting the introduction of such evidence.

## A. *Admissibility of the Medical Bills to Establish Non-Monetary Damages*

As an initial matter, it must be noted that the Supreme Court of Virginia, in *Barkley v. Wallace*, has specifically determined that medical bills may be introduced in evidence, despite being discharged in bankruptcy, where they are offered to establish that the proponent experienced the non-monetary elements of pain, suffering, and inconvenience as a result of the accident. Therefore, the bills, or a summary thereof, are admissible at least for those purposes. The *Barkley* Court, however, expressly declined to decide the specific question at issue here, whether the medical bills are admissible to collect their specific amounts as damages when they have been discharged in bankruptcy. *Barkley*, 267 Va. at 372 ("Thus, we are not presented with and do not decide the question whether evidence of medical bills is admissible to recover the amount charged for such treatment when a plaintiff has obtained a discharge of those medical bills in bankruptcy proceedings.").

## B. *Admissibility of the Bills for their Monetary Values*

The collateral source rule states, "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes." *Acuar v. Letourneau*, 260 Va. 180, 189 (2000) (quoting *Schickling v. Aspinall*, 235 Va. 472, 474 (1988)). *See also* Restatement (Second) of Torts § 920A(a) (1979) ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover

all or a part of the harm for which the tortfeasor is liable."). The Supreme Court of Virginia has said "[a] person who is negligent and injures another owes to the latter full compensation for the injury inflicted . . . and payment for such injury from a collateral source in no way relieves the wrongdoer of the obligation." *Acuar*, 260 Va. at 189 (quoting *Walthew v. Davis, Adm'r*, 201 Va. 557, 563 (1960)) (internal quotations and alterations omitted).

 Early on, the collateral source rule was most often asserted in cases where the collateral compensation was insurance. The rule was adopted in Virginia in *Baltimore & Ohio RR. v. Wightman's Adm'r*, 70 Va. (29 Gratt.) 431, 446 (1877), where the Court found that "[t]he mere fact that the family of the deceased received money from some other source would not justly influence the measure of compensation to be made by the Defendant for injuries attributable to the conduct of its employees and agents." Notably, English common law specifically allowed a tortfeasor to reduce the quantum of damages by the injured's insurance payments. The Supreme Court of Virginia, in *Wightman's Adm'r*, harmonized Virginia law with the rest of the states, at least at the end of the nineteenth century, by adopting the collateral source rule, and rejecting the English rule. *Id.* But, as the Supreme Court of Virginia has noted, "[l]ater cases have applied the rule to social security benefits, public and private pension payments, unemployment and workers' compensation benefits, vacation and sick leave allowances, and other payments made by employers to injured employees, both contractual and gratuitous." *Schickling*, 235 Va. at 474 (citing 22 Am. Jur. 2d, *Damages*, §§ 566-87 (1988)). The Court has also said of the underlying rationale that:

> The collateral source rule is designed to strike a balance between two competing principles of tort law: (1) a plaintiff is entitled to compensation sufficient to make him whole, but no more, and (2) a defendant is liable for all damages that proximately result from his wrong. A plaintiff who receives a double recovery for a single tort enjoys a windfall; a defendant who escapes, in whole or in part, liability for his own wrong enjoys a windfall. Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.

*Acuar*, 260 Va. at 193 (quoting *Schickling*, 235 Va. at 474-75).

 This specific question, whether a bankruptcy discharge is within the scope of the collateral source rule, is a matter of first impression in this Circuit. However, the judges of this Circuit have had occasion to examine the scope of the collateral source rule in analogous circumstances. In 1995, Judge

Roy B. Willett concluded in *King v. Sowers*, No. 93-1005 (City of Roanoke 1995), that a personal injury plaintiff could not claim, as an element of damages, "money written-off in compliance with Medicaid or with an insurance agreement," though he did not address the impact of the collateral source rule. In 1998, Judge Robert P. Doherty, in *Hill v. Tuttle*, 45 Va. Cir. 296 (City of Roanoke 1998), determined that medical charges that were written off, forgiven, or remitted by health care providers were within the scope of the collateral source rule. Finally, in 1999, Judge Jack B. Coulter, in *Kelly v. Thomasson*, 48 Va. Cir. 100 (Roanoke County 1999), after an extremely thorough analysis of Virginia jurisprudence, concurred with Judge Doherty's decision, finding that a personal injury plaintiff was entitled to receive amounts written-off, pursuant to the collateral source rule. Two other circuits in Virginia have held that the collateral source rule does not and should not apply to debts discharged in bankruptcy. *Choice v. Kruse*, 57 Va. Cir. 13, 14 (Chesterfield County 2001); *Walker v. Long*, 57 Va. Cir. 419, 420 (City of Richmond 1993). Specifically, those courts opined that: (1) a bankruptcy discharges debt by the plaintiff's own act; (2) the application of the collateral source rule to bankruptcy situations would encourage more bankruptcies; and (3) the collateral source rule speaks of payment from a collateral source, whereas a bankruptcy is merely a discharge. *Choice*, 57 Va. Cir. at 14; *Walker*, 57 Va. Cir. at 420. Lang urges this Court to adopt that logic.

Relying on an illuminating consideration that Judge Robert P. Doherty of this Circuit made regarding the collateral source rule in an analogous case, that it "is not just a string of fact specific legal words, and neither does it contain a black letter rule that must be followed by rote . . . it is the embodiment of a concept," this Court finds that a bankruptcy discharge is within the scope of the rule for the following reasons. *Tuttle*, 45 Va. Cir. at 297.

First, a bankruptcy may discharge debt by the plaintiff's own act, but that is no different than the plaintiff affirmatively seeking a gratuity from an employer, family member, or third party, or from seeking government benefits, to offset damages resulting from a tort. All of these situations might be initiated by the plaintiff, and in the case of public benefits might be out of the public purse, but nonetheless have been held to fall within the scope of the collateral source rule. *Schickling*, 235 Va. 474 (citing 22 Am. Jur. 2d, *Damages*, §§ 566-87 (1988)).

Second, though a bankruptcy is not, by definition, a "collateral source," since there is no collateral payment, the clear underlying purpose or reason for the rule is that "[b]ecause the law must sanction one windfall and deny the

other, it favors the victim of the wrong rather than the wrongdoer." *Acuar*, 260 Va. at 193 (quoting *Schickling*, 235 Va. at 474-75). Employing this rationale, a conclusion that the collateral source rule does not apply in a bankruptcy situation actually undermines the purpose of the well-established rule, by rewarding the tortfeasor with a windfall.

Third, the general rule regarding damages and the reason for the collateral source rule, both previously mentioned, support the inclusion of a bankruptcy. Practically speaking, there are situations, such as here, where an injured party, otherwise solvent before the tort, becomes insolvent because of the medical bills and other damages. The injured party is wholly unable to foresee the medical bills and other associated debts to make a proper financial plan. In that circumstance, there may be only one option, filing for bankruptcy.

A tortfeasor should not receive a windfall at the expense of the creditors and the victim of the tort, especially when the bankruptcy might itself have been thrust into being by the tortfeasor. A bankruptcy leaves the injured party with a financial stigma and ruined credit. Notably, consumer credit reporting agencies may include the discharge on the bankrupt's credit report for a period of ten years after the order for relief is entered. 15 U.S.C. § 1681c(a)(1).

Fourth, it is questionable whether the inclusion of bankruptcy within the collateral source rule would actually encourage more bankruptcies. This notion seems as remote as the suggestion that not including bankruptcies within the scope of the collateral source rule would encourage more torts.

Moreover, the same argument applies in the case of government benefits, long held to be within the collateral source rule. This argument asserts the inclusion of government benefits within the scope of the collateral source rule encourages more applications for government benefits. Even if true, legal options provided by a legislature or by a third party as a gratuity to the injured "should not be applied as a credit against the quantum of damages the tortfeasor owes." *Acuar*, 260 Va. at 189 (quoting *Schickling*, 235 Va. at 474).

The tortfeasor should not obtain a windfall from his or her wrongful act. If it were otherwise, this Court would implicitly endorse the tortious conduct and undermine the general rule that "[t]he plaintiff is entitled to recover all such damages as are the natural and proximate results of the wrongful act complained of." *Younger*, 214 Va. at 663 (quoting *Nash*, 118 Va. at 115). Of course, this all assumes that the tortfeasor is found liable for the injury.

This should not mean, however, that the injured plaintiff should receive a grand windfall, violating the proviso of the general rule regarding personal injury damages – only enough to fairly compensate, and no more, absent an exception. Because this Court finds that, as a matter of substantive tort law,

the collateral source rule should include debts discharged in bankruptcy, and also because damages ought to be only compensatory absent a right to another remedy, any amounts awarded by a jury above and beyond the statutory liens and assignment of benefits, should be transferred to the health care providers by the plaintiff.

There is no prohibition against an individual, who has had debts discharged in bankruptcy, paying the debt if he or she wants to do so. Though the debt is legally discharged and the bankrupt is no longer legally obligated, he or she may still feel morally obligated and compelled to repay the debt. As such, it seems prudent, so as not to unjustly enrich a plaintiff, to place a duty on the plaintiff, or counsel, to forward those amounts above and beyond the statutory liens and assignment of benefits to the health care providers in pro rata shares. Courts have long had the power to impose a constructive trust "where [property] has been acquired by a fraud or improper means, but also where it has been fairly and properly acquired." *Leonard v. Counts*, 221 Va. 582, 589 (1980).

To accomplish this, the Court will allow the medical bills to be introduced in evidence, so long as they are otherwise competent, for both purposes, and will supply the jury with a special verdict form requiring the jury to make separate findings as to the special damages, as well as the general damages. As the mention of bankruptcy could severely prejudice the plaintiff's case, the defendant is prohibited from injecting that into evidence. It should also be noted that this opinion does not in any way relieve the plaintiffs of their obligations under Va. Code § 8.01-413.01.