Alisa MILLS, Appellant,

v.

Kevin FLETCHER, Appellee.

No. 04–06–00345–CV.

Court of Appeals of Texas,
San Antonio.

May 16, 2007.

David L. Plaut, Jeffrey C. Glass, Hanna & Plaut, L.L.P., Austin, for appellant.

R. Craig Bettis, John N. Tyler, Tyler & Peery, San Antonio, William J. Boyce, Fulbright & Jaworski L.L.P., Jim M. Perdue, The Perdue Law Firm, L.L.P., Peter M. Kelly, Moore & Kelly, P.C., Houston, Roger W. Hughes, Adams & Graham, L.L.P., Harlingen, Jay Harvey, Texas Trial Lawyers Ass'n, Austin, Kirk L. Pittard, Durham & Pittard, LLP, Dallas, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

This appeal arises from a personal injury lawsuit brought by Appellee Kevin Fletcher against Appellant Alisa Mills. At trial, the jury awarded Fletcher $1,551.00 in past medical expenses. On appeal, Mills argues that pursuant to section 41.0105 of the Texas Civil Practice and Remedies Code, the amount of Fletcher's award for past medical expenses should have been reduced because his medical providers accepted lesser amounts for their services from his health insurance company, thereby "writing off" the balance due from Fletcher. Because we agree that section 41.0105 requires such a reduction, we reverse the trial court's judgment and remand the cause for entry of judgment consistent with this opinion.

## DISCUSSION

Section 41.0105 of the Texas Civil Practice and Remedies Code, titled "Evidence Relating to Amount of Economic Damages," provides the following:

> In addition to any other limitation under law, *recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant.*

TEX. CIV. PRAC. & REM.CODE ANN. § 41.0105 (Vernon Supp.2006) (emphasis added). Here, Mills argues that the "written-off" or adjusted amounts were neither actually paid nor *actually incurred* by or on behalf of Fletcher. As such, Mills argues that pursuant to section 41.0105, Fletcher was not entitled to recover the written-off amounts.[1] In response, Fletcher argues that he "incurred" the medical charges at the time of his doctor's visit and that any

---

1. We note that in response to Mills's issues on appeal, Fletcher argues that Mills's bill of exceptions at trial was insufficient to show that Fletcher will never be liable for the written-off amounts. We disagree. In her bill of exceptions, Mills introduced Defendant's Exhibits two 2 and 3. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex.2006) ("The purpose of a bill of exceptions is to allow a party to make a record for appellate review of matters that do not otherwise appear in the record, such as evidence that was excluded."). These exhibits were copies of bills from Fletcher's health care providers, showing the adjustments made and the resulting balance of "$0.00." We believe that these exhibits were sufficient. Zero means zero— Fletcher no longer owes any money to his health care providers.

amounts later written off do not affect the charges that he "incurred."

According to the Code Construction Act, when interpreting a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN § 311.011(a) (Vernon 2005); *see Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651 (Tex.2006) ("Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on."). Additionally, "[w]henever possible, we construe statutes as written, but where the enacted language is nebulous, we may cautiously consult legislative history to help divine legislative intent." *Alex Sheshunoff,* 209 S.W.3d at 652.

In support of her interpretation, Mills cites to definitions found in common dictionaries:

> Incur: To become liable or subject to; to bring down upon oneself (as in "incur expenses"). *Webster's Ninth New Collegiate Dictionary,* at 611 (1984).

> Incur: To acquire or come into (something usually undesirable); to sustain; to become liable or subject to as a result of one's actions; to bring upon oneself. *The American Heritage Dictionary of the English Language* (4th ed. online).

> Incur: To suffer or bring on oneself (a liability or expense). *Black's Law Dictionary* 782 (8th ed.2004).

Thus, Mills argues that "the word incur, in legal parlance, means simply 'to become liable to pay.'" And, according to Mills, because the amounts were written off or adjusted by the medical providers, Fletcher will never have to pay the amounts written off.

Additionally, Mills emphasizes that pursuant to rules of grammar, the word "actually" modifies both "paid" and "incurred." As such, "actually incurred" must necessarily be a limitation on expenses "incurred." That is, if "incurred" is a big circle, "actually incurred" must necessarily refer to a smaller circle within that big circle. In contrast, Fletcher argues in his brief that "actually incurred" refers to those expenses that have been charged but not paid. We agree with Mills's interpretation.

Here, the statute uses the word "incurred" twice: "recovery of medical or health care expenses *incurred* is limited to the amount *actually paid or incurred* by or on behalf of the claimant." TEX. CIV. PRAC. & REM.CODE ANN. § 41.0105 (Vernon Supp.2006) (emphasis added). In referring to "incurred" the second time, the Legislature chose to modify "incurred" with the word "actually." As such, "incurred" must mean something different than "actually incurred." And, the word "actually" modifying "incurred," as well as the phrase "[i]n addition to any other *limitation* under law," shows an intent by the Legislature to limit expenses simply "incurred." Thus, in construing this statute, we believe that "medical or healthcare expenses incurred" refers to the "big circle" of medical or healthcare expenses incurred at the time of the initial visit with the healthcare provider, while, as applied to the facts presented here, "actually incurred" refers to the "smaller circle" of expenses incurred after an adjustment of the healthcare provider's bill.

In contrast, Fletcher's interpretation of "actually incurred" does not limit the phrase "incurred" in any manner. We, however, believe that by modifying "incurred" with the word "actually" the Legislature did intend to limit expenses "incurred."

We also note that both parties point to legislative history in support of their respective interpretations. Mills emphasizes that section 41.0105 was part of House Bill 4's tort reform legislation, which was enacted "to bring more balance to the Texas civil justice system, reduce litigation costs, and address the role of litigation in society." House Comm. on State Affairs, Bill Analysis, Tex. H.B. 4, 78th Leg., R.S. (2003).[2] As such, Mills argues that we must construe section 41.0105 with this general intent in mind.

■ In support of his interpretation, Fletcher points to an exchange between Senators Hinojosa and Ratliff during the Senate's debate of House Bill 4, which he argues shows that the person who drafted the bill intended that the word "incurred" be synonymous with the word "charged." Additionally, Fletcher emphasizes that, although earlier versions of the bill would have eliminated the collateral source rule, those versions were amended to delete this language. As such, Fletcher argues that we should not interpret section 41.0105 to violate the collateral source rule.[3]

However, given the plain meaning of section 41.0105's language, we need not consider legislative history here. *See Alex Sheshunoff,* 209 S.W.3d at 652 (explaining that only when the enacted language is "nebulous" should a court "cautiously consult legislative history to help divine legislative intent"). Indeed, the Texas Supreme Court has emphasized that if the "text is unambiguous, we must take the Legislature at its word and not rummage around in legislative minutiae." *Id.* at 652 n. 4.

■ We, therefore, hold that section 41.0105 limits a plaintiff from recovering medical or health care expenses that have been adjusted or "written off."

■ In his cross-point on appeal, Fletcher contends that if section 41.0105 is construed to allow a defendant the right to offset charges that were written off by a medical provider because of its contract with a health insurance company, then section 41.0105 is unconstitutional under the Texas Constitution.

■ First, Fletcher urges a violation of substantive due process. In making a substantive due process determination, we look at whether the statute has a reasonable relation to a proper legislative purpose, and whether it is arbitrary or discriminatory. *Garza–Vale v. Kwiecien,* 796 S.W.2d 500, 505 (Tex.App.-San Antonio 1990, writ denied).

It is Fletcher's position that, if defendants are allowed to benefit from medical provider write-offs, then the statute's "sole

---

**2.** This document is available at http://www.legis.state.tx.us/tlodocs/78R/analysis/pdf/HB00004S.pdf.

**3.** Our interpretation clearly does violate the collateral source rule. The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy. *Brown v. Am. Transfer & Storage Co.,* 601 S.W.2d 931, 934 (Tex.1980). Thus, "[t]he collateral source rule bars a wrongdoer from *offsetting his liability* by *insurance benefits independently procured by the injured party."* *Mid–Century Ins. Co. v. Kidd,* 997 S.W.2d 265, 274 (Tex.1999) (emphasis added). Here, the insurance adjustments or amounts "written off" are a benefit that a patient receives only as a result of procuring healthcare insurance. And, pursuant to our interpretation of section 41.0105, Mills (the "wrongdoer") will have the benefit of those adjustments made as the result of *Fletcher* having paid premiums and carrying health insurance. The Legislature, however, has the power to enact a statute that abrogates the collateral source rule, and we believe that the plain language of section 41.0105 shows the Legislature's intent to do so here.

purpose would be to discriminate against financially responsible injured parties by taking away their benefits or rights they acquired under their health insurance policy, and give that right or benefit to a wrongdoer, thus treating the financially responsible injured party differently than a financially irresponsible party." According to Fletcher, this will result in people either foregoing health insurance or not submitting their bills to their health insurance company for fear that the defendant will benefit from their health insurance coverage. And, argues Fletcher, this will result in a loss of medical care to injured parties and the nonpayment of medical bills. It does not seem likely, however, that the Legislature considered the possibility that people will risk not having their medical bills covered by insurance just to make sure that a defendant from whom they may recover will not benefit from their health insurance coverage. It is more likely that the Legislature's purpose was to develop a statutory scheme that would allow neither the injured plaintiff nor the responsible defendant to benefit from the medical provider's write-off. In the end, regardless of whether an injured plaintiff is covered by health insurance or whether some of his bills are written off because of contracts with health insurance carriers, the injured plaintiff will still be able to recover from the defendant the amount paid to his medical provider. Thus, the statute has a reasonable relation to a proper legislative purpose, and it is not arbitrary or discriminatory.

■ Second, Fletcher urges a violation of the open courts provision of the Texas Constitution. To establish an open courts violation, a litigant must show he has a cognizable common law cause of action that is being restricted and that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 843 (Tex.1990). Here, section 41.0105 in no way restricts a common law cause of action. A plaintiff still has access to the courts to bring a common law cause of action against a negligent defendant for injuries sustained in an accident. By allowing the defendant an offset for a medical provider's write-off due to a contract with the plaintiff's insurance carrier, the Legislature has only limited the damages a plaintiff may recover. As stated above, the plaintiff will still be able to recover the amount paid to his medical provider. We, therefore, find no open courts violation.

■ Lastly, Fletcher contends section 41.0105 is unconstitutionally vague. Fletcher urges that because there is a dispute over the statute's meaning, it is necessarily vague and a violation of due process.

■ A statute is unconstitutionally vague if the persons regulated by it are exposed to risk or detriment without fair warning of the nature of the proscribed conduct. *Raitano v. Tex. Dep't of Pub. Safety*, 860 S.W.2d 549, 551 (Tex.App.-Houston [1st Dist.] 1993, writ denied). We scrutinize civil statutes less severely than criminal statutes because the consequences of imprecision are not as severe. *Zaborac v. Tex. Dep't of Pub. Safety*, 168 S.W.3d 222, 225 (Tex.App.-Fort Worth 2005, no pet.). A due process violation occurs only when conduct is stated in such vague terms that people of common intelligence must guess at what is required. *Raitano*, 860 S.W.2d at 551.

We do not find section 41.0105 to be unconstitutionally vague. First, there is no conduct proscribed by section 41.0105. Second, the mere fact that the parties disagree as to its meaning does not mean we must necessarily guess at its meaning. We have interpreted the meaning of sec-

tion 41.0105 by applying rules of statutory construction and by considering the plain meaning of section 41.0105. Thus, Fletcher's constitutional challenges must fail.

### CONCLUSION

Because section 41.0105 prevents Fletcher from recovering amounts "written off" by a healthcare provider, we reverse and remand the cause for entry of judgment consistent with this opinion.

STEVEN C. HILBIG, Justice (concurring in judgment only).

Dissenting opinion by CATHERINE STONE, Justice.

Dissenting opinion by CATHERINE STONE, Justice.

This appeal pits the sweeping tort reform changes of HB4 against the longstanding collateral source rule. Because I believe the majority opinion sweeps a little more broadly than the Legislature intended, I respectfully dissent.

The language of the statute in question, section 41.0105 of the Texas Civil Practice and Remedies Code, is not a model of clarity, perhaps because it underwent numerous revisions before it was finalized. *See* Kirk L. Pittard, *Dead or Alive: The Collateral Source Rule After HB4*, THE ADVOCATE, Winter 2006, at 76, 76–77 (outlining the five versions of the statute that were considered before section 41.015 was enacted). Regardless of whether the statute is ambiguous, this Court is entitled to consider various factors as we attempt to discern the statute's meaning. The Code Construction Act informs us that when the Legislature enacts a statute, it is presumed that the entire statute is meant to be effective; a just and reasonable result is intended; feasible execution of the statute is contemplated; and public interest is favored over any private interest. TEX.

GOV'T CODE ANN. § 311.021 (Vernon 2005). I believe that the interpretation of section 41.0105 advocated by Mills and adopted by the majority fails to support any of these presumed intended outcomes.

### Effectiveness of Entire Statute

The interpretation of section 41.0105 endorsed by the majority fails to give meaning to the term "incurred." One incurs a liability when one suffers or brings on oneself a liability or expense. *Black's Law Dictionary* 782 (8th ed.2004). Medical charges are incurred at the time the services are rendered to the patient. *See Black v. American Bankers Ins. Co.*, 478 S.W.2d 434 (Tex.1972) (concluding that patient incurs hospital expenses at the time he enters the hospital and receives medical services); *American Indemnity Co. v. Olesijuk*, 353 S.W.2d 71, 72–72 (Tex.Civ.App.-San Antonio 1961, writ dism'd) (holding that insured incurred medical expenses when he entered hospital and received medical services). Section 41.0105 provides that recoverable medical damages include "expenses incurred ... limited to the amount actually paid or incurred by or on behalf of the claimant." The statute does not redefine the term "incurred" and it sets forth no different point in time from which to determine what expenses have been incurred. As one commentator has noted, there can be reasonable and necessary medical expenses that are not paid, but that are nonetheless incurred, thus demonstrating that "the two words must mean different things." *See* Jim Perdue, Jr., *Maybe It Depends on What Your Definition of "Or" Is? A Holistic Approach to Texas Civil Practice and Remedies Code § 41.0105, The Collateral Source Rule, and Legislative History*, 38 TEX. TECH. L.REV. 241, at 250 (2006).

### Just and Reasonable Result

Perhaps the most compelling reason to reject the reading of the statute adopted

by the majority is that it does not produce a just or reasonable result. In a nutshell, the wrongdoer is rewarded by the injured party's foresight to obtain medical insurance. In many cases it will likely be the wrongdoer's liability insurance carrier that actually benefits from the injured party's foresight; but one thing is certain: insult is added to injury when the injured party pays premiums for medical insurance coverage and then watches the benefits of that coverage lower the accountability of the tortfeasor for her negligent conduct. Cf., Brown v. American Transfer & Storage Co., 601 S.W.2d 931, 934 (Tex.1980) (recognizing that collateral source rule justly deprives a wrongdoer of the benefit of insurance independently obtained by the injured claimant).

**Feasible Execution of the Statute**

The statutory interpretation advanced by the majority spawns some very practical questions that suggest difficulty, not feasibility, in execution of the statute. The majority opinion ultimately stands for the proposition that the statutory language "actually paid or incurred" means "actually paid or actually incurred as ultimately determined by the provisions of an insurance policy." Medical bills can take months to be generated by the providers, and even longer periods to be processed by insurance carriers. At what point does a court decide the bills have been incurred? What happens when there is a dispute regarding the amounts due or the extent of coverage? What if adjustments are made after litigation is initiated or concluded? The statute provides no answers to these questions; and here is why the statute is silent on these issues—it was not intended to spawn these issues. There is simply no indication that the collateral source rule was eliminated by section 41.0105, thus there is no need for these questions to arise.

**Public Interest vs. Private Interest**

The public interests at stake here seem to be that (1) citizens should be responsible and purchase medical insurance to the extent they are financially able to do so; (2) responsible citizens should reap the full benefit of insurance coverage they have purchased; (3) tortfeasors should be held accountable for their actions; and (4) tortfeasors should not be fortuitous beneficiaries of an injured party's foresight to purchase medical insurance. The private interests at stake are not expressly set forth in this record. One can reasonably assume that in many cases the private interest will be that of liability insurance carriers seeking to minimize their expenses in resolving liability claims. Again, there is nothing in the statute indicating the Legislature sought to elevate private interests above public interests. All evidence is to the contrary. The laudable public benefit of the collateral source rule was continued by the Legislature when it rejected earlier proposed versions of section 41.0105 that would have eliminated the collateral source rule.

I recognize that the meaning of section 41.0105 is of great significance to many parties in this state, and that the majority decision was not reached lightly. However, because I believe the majority decision erroneously allows Alisa Mills to reap the benefits of Kevin Fletcher's decision to purchase health insurance, I respectfully dissent.