NO. 07-07-0351-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 5, 2009

_____

GAILIA TATE, APPELLANT

V.

MIGUEL HERNANDEZ, APPELLEE

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-533,790; HONORABLE BILL SOWDER, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

"To be, or not to be.  That is the question."

William Shakespeare, *Hamlet,* Act III, scene i

While perhaps overstating the significance of issues presented by this case, the ultimate *question* we must answer is the role of personal injury litigation in our society.  Is it to punish the wrongdoer or to compensate the injured party?  That is the question.

Appellant, Gailia Tate, appeals from a judgment entered after a jury verdict in a personal injury auto accident case that creates a constructive trust and orders her to pay sums to the trust for the benefit of certain creditors of Appellee, Miguel Hernandez. Raising five issues, Tate contends the trial court erred (1) in awarding medical bills that had been discharged in bankruptcy, (2) in not limiting Hernandez's recovery of medical or health care expenses to amounts actually paid or incurred in accordance with section 41.0105 of the Texas Civil Practice & Remedies Code, (3) in exercising jurisdiction where no jurisdiction existed by awarding judgment in favor of a non-party; (4) by creating a constructive trust, and (5) by awarding attorney's fees in a personal injury lawsuit.

## *"An Enigma Shrouded in a Puzzle"*[1]

In 2003, the 78th Legislature passed House Bill 4 which included an amendment to the Texas Civil Practice and Remedies Code adding section 41.0105, which simply states:

> [i]n addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant.

Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (Vernon 2005).

This and similar statutes have been enacted nationwide as a part of the phenomena generically referred to as "tort reform." The genesis of this type of *paid or incurred* statute

---

[1] *See* Judge Randy Wilson, *"An Enigma Shrouded in a Puzzle",* 71 Tex. B. J. 812, November 2008, for a discussion of some of the issues surrounding interpretation of section 41.0105 of the Texas Civil Practice and Remedies Code.

has been a desire among reformers to limit the sums recoverable by plaintiffs in personal injury causes of action to those amounts actually paid by the plaintiff or a collateral source insurance company, thereby eliminating recovery for medical bills that are ultimately written-off or written-down as a part of the underlying insurance settlement. Stated alternatively, the purpose of similar statutes has been to limit the recovery in a personal injury cause of action to those sums necessary to make the injured parties whole.

Although there are few appellate decisions clarifying the meaning of the Texas statute in the context of a write-off or write-down of medical bills in consideration of insurance payments, there are no appellate decisions reviewing the *paid or incurred* provision in the context of a debt discharged in bankruptcy. Accordingly, we are squarely faced with the unique issue: Is a debt which has been discharged in bankruptcy "paid or incurred" for purposes of section 41.0105 of the Texas Civil Practices and Remedies Code? Finding that it is not, we reverse the judgment of the trial court below and render the judgment the trial court should have rendered.[2]

---

[2]Tex. R. App. P. 43.3.

## Background

The facts underlying this appeal are not disputed.[3] On April 1, 2005, Hernandez filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division. Six months later, on October 21, Hernandez was involved in an automobile accident with Tate when Tate's vehicle drifted into Hernandez's lane of traffic, collided with Hernandez's vehicle, and caused it to roll multiple times. Hernandez incurred medical bills as a result of the injuries he sustained in the accident. On November 22, the bankruptcy court entered an order converting Hernandez's Chapter 13 bankruptcy proceeding to a Chapter 7 bankruptcy proceeding. In that proceeding Hernandez filed a *Debtors Statement in Compliance with Rule 1019* wherein he listed his personal injury chose in action as an asset acquired after the filing of his original Chapter 13 petition, but

---

[3]In accordance with Rule 34.6(c) of the Texas Rules of Appellate Procedure, Tate requested a reporter's record limited to two post-trial hearings held April 9, 2007 and June 29, 2007. Therefore, as stated herein, the background facts adopted by this Court are those facts that are undisputed in Tate's and Hernandez's briefs. *See* Tex. R. App. P. 38.2(a)(1)(b).

When an appellant requests a partial reporter's record, the points or issues to be presented on appeal are limited to those points or issues contained in the statement of points or issues included in the request. Here, Tate's request for a partial reporter's record stated that the issues to be presented on appeal were as follows:

(1) whether the trial court erred in awarding medical bills that had been discharged in bankruptcy and were not "actually paid or incurred" in accordance with section 41.0105 of the Texas Civil Practice and Remedies Code;
(2) whether the trial court erred in awarding damages to Plaintiff's medical providers, who were not parties to the lawsuit, had asserted no claims against Defendant, had filed [no] pleadings in the lawsuit, and over which the trial court had no jurisdiction;
(3) whether the trial court erred in making a *de facto* award of attorney's fees to Plaintiff's attorneys when there were no pleadings, evidence, or legal [basis] to support such an award; and
(4) whether Plaintiff is a "successful party" and entitled to recover his costs of court when no recovery was made by the Plaintiff.

Although not identically worded, we find Tate's issues, as presented, are subsumed within and therefore properly raised by the statement of points or issues contained in Tate's request for a partial reporter's record.

before the Chapter 7 conversion. Hernandez's statement further listed certain medical bills owed to Lakeridge Primary Health Center, Covenant Medical Center, Physical Therapy of Lubbock, and Lubbock Pharmacy as debts incurred after confirmation but before conversion. Each of those debts were for medical bills arising out of the October 21st accident.

Although disclosed to the bankruptcy trustee, Hernandez's personal injury chose in action never became property of the bankruptcy estate.[4] Therefore, on February 3, 2006, Hernandez filed this suit seeking damages for personal injuries suffered as a result of the automobile accident with Tate. Among other damages, Hernandez sought recovery of his expenses for his past and future medical treatment, including those expenses that were listed as dischargeable debts in his bankruptcy proceeding.

On March 23, 2006, the bankruptcy court entered an order discharging Hernandez's debts, including his medical bills. An attachment to the Chapter 7 discharge order indicated that the order eliminated Hernandez's legal obligation to pay any discharged debt and prohibited any attempt to collect from Hernandez a debt that was discharged.

Hernandez's personal injury action was subsequently tried to a jury, and on March 27, 2007, the jury returned a verdict in favor of Hernandez. The jury found both Tate and Hernandez negligent, assigning 70% fault to Tate and 30% to Hernandez. In a non-global

---

[4]Section 348 of the Bankruptcy Code provides that "property of the estate in the converted case shall consist of property of the estate, *as of the date of filing the petition,* which remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A) (emphasis added).

itemized special issue, the jury awarded Hernandez recovery of specific past medical expenses in the amount of $9,035.94 as follows:

| | |
|---|---|
| Lubbock Pharmacy | $ 120.48 |
| Physicians Network Services | $ 463.00 |
| Covenant Health System | $5,028.46 |
| Physical Therapy Services of Lubbock | $2,928.00 |
| Lubbock Diagnostic Radiology | $ 496.00 |
| Total | $9,035.94 |

Each medical provider for which damages were awarded, other than Lubbock Diagnostic Radiology ($496.00), was listed on Hernandez's bankruptcy filing. The jury did not award Hernandez recovery of any other damages.

Following two hearings on damages issues, the trial court entered judgment[5] against Tate in the amount of $7,017.92. The judgment represented the $9,035.94 awarded by the jury, less 30% for Hernandez's negligence, plus $692.76 in prejudgment interest. In addition, the trial court ordered the funds to be placed in a "constructive trust" for the benefit of two health care providers (Covenant Heath System–$2,111.95 and Physical Therapy Services

---

[5]Judgment was entered by J. Blair Cherry, Jr., Senior District Judge acting by assignment. Tex. Gov't Code Ann. § 75.002(a)(3) (Vernon 2005).

of Lubbock–$1,024.80)[6] and Hernandez's attorneys (Glasheen, Valles & DeHoyos–$3,881.17). No award was made to Hernandez himself.

**Discussion**

I. *Recoverability of Damages "Discharged" in Bankruptcy*

Before determining the limitation imposed by Section 41.0105, the first issue we must address is whether medical expenses discharged in bankruptcy are generally recoverable in a personal injury lawsuit. Stated conversely, should a wrongdoer receive the benefit of a discharge of medical expenses in bankruptcy, when computing an injured party's damages? This is the bankruptcy equivalent of the collateral source rule.

The "collateral source rule" is a common law rule that, in part, prevents a wrongdoer from benefitting from a collateral source of discharge of liability for medical expenses independently procured by a party, including the injured party, not in privity with the wrongdoer. *Mid-Century Ins. Co. v. Kidd,* S.W.2d 264, 274 & n.48 (Tex. 1999) (*citing Brown American Transfer & Storage Co.,* 601 S.W.2d 931, 934-36 (Tex.1980), *cert. denied,* 449 U.S. 1015 (1980) (holding that a wrongdoer cannot receive credit for insurance independently procured by the injured party.)); *Black v. American Bankers Ins. Co.,* 478 S.W.2d 434, 438 (Tex. 1972) (holding hospital expenses eventually paid by Medicare on

---

[6]Covenant Health System and Physical Therapy Services of Lubbock were not parties to the proceedings below. Furthermore, they did not take any action to collect their bills other than to agree with Hernandez's counsel to accept the sums awarded. In light of the discharge in bankruptcy, the other medical providers (including the creditor not named in the bankruptcy petition) would not agree to accept any portion of the jury's award.

7

behalf of plaintiff were recoverable); *Taylor v. American Fabritech, Inc.,* 132 S.W.3d 613 (Tex.App.–Houston [14th Dist.] 2004, pet. denied) (holding that payments made under an employee benefit plan constitute a collateral source as against the employer). We find that the discharge of medical expenses through bankruptcy is akin to the discharge of an obligation by a collateral source. *See Dodd v. Lang,* 71 Va. Cir. 235, 242-43, 2006 WL 2257160 (Va. Cir. Ct. 2006) (holding as a matter of substantive tort law, the collateral source rule includes debts discharged in bankruptcy).

Furthermore, we distinguish the concept of recovery of *damages* from the concept of discharge of *debts.* From a bankruptcy perspective, the term "debt" simply means liability on a claim, 11 U.S.C.A. § 101(12), where a "claim" is the right to either payment or an equitable remedy, whether or not such right is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 U.S.C.A. § 101(5). A *debt* is merely a sum of money owing to one person from another, including not only the obligation of the debtor to pay but the right of the creditor to receive and enforce payment. *Black's Law Dictionary* 482 (8th ed. 2004). Although sometimes loosely used interchangeably, debts (owed by the injured party to a medical provider) and damages (owed by the wrongdoer to the injured party) are distinctly different concepts. In the context of the injured party as the bankrupt party, *debts* are dischargeable in bankruptcy; *damages* are not.

Therefore, whenever an injured party incurs medical expenses proximately caused by the tortious conduct of another, our system of jurisprudence does not transfer liability for those debts to the wrongdoer. Instead, our jurisprudence allows the injured party to recover

8

a judgment against the wrongdoer for the amount of actual *damages* proximately caused by the wrongful conduct. In a negligence case such as this, a plaintiff is permitted to recover *damages* for past and future medical expenses as compensation for the *debt* incurred. How that debt is ultimately settled, either through payment, gratuity, insurance, write-down, write-off, or bankruptcy is of no consequence to the issue of whether the plaintiff has been damaged by the wrongdoer. The debt is merely an evidentiary element of the plaintiff's damages.

Because a debt for medical expenses is merely evidence of plaintiff's damages, once incurred, the subsequent discharge of the debt in bankruptcy does not prohibit a plaintiff from offering proof of those past medical expenses as evidence of a component element of his damages. Therefore, subject to further limitations provided by law, we find a plaintiff may recover, as compensatory damages, the reasonable and necessary cost of medical expenses proximately caused by the tortious conduct of a wrongdoer, even if those expenses were subsequently discharged in bankruptcy. Having determined that Hernandez's reasonable and necessary medical expenses were recoverable, we overrule Tate's first issue and proceed to address her second issue, the limitation imposed by section 41.0105 of the Texas Civil Practice and Remedies Code.

## II. *Limitation of Recovery of Medical or Health Care Expenses*

If we begin with the premise that the Legislature intended to accomplish something by the enactment of section 41.0105, then we must apply that provision in such a fashion as

9

to accomplish that purpose. Few cases have shed light on that purpose. To date, the leading case is *Mills v. Fletcher,* 229 S.W.3d 765 (Tex.App.–San Antonio 2007, no pet.). In a plurality decision, the court held that section 41.0105 limited a plaintiff's recovery for past medical expenses to the amounts "actually paid or incurred," thereby prohibiting recovery of medical or health care expenses that had been discounted, adjusted, or written off. In *Mills,* the defendant argued that the plaintiff's recovery of past medical bills should have been reduced because the medical providers accepted lesser amounts from the plaintiff's insurance carrier, thereby "writing off" the difference. *Id.* at 767. The court found that the language of section 41.0105 manifested an intent by the Legislature to differentiate amounts "actually incurred" from amounts merely "incurred," with the amount actually incurred being that sum of money necessary to compensate the plaintiff for sums actually expended by the plaintiff or his insurance carrier. *Id.* at 768. In her dissenting opinion, Justice Stone took issue with the majority's treatment of the term "incurred" and she called into question the court's finding that the plain language of section 41.0105 showed the Legislature's intent to abrogate the collateral source rule. *Id*. at 771. According to Justice Stone, the majority opinion actually rewarded the wrongdoer for the injured party's foresight in obtaining medical insurance. *Id.* at 772.

While departing somewhat from the rationale of the *Mills* decision as it dealt with the collateral source rule, the Eastland Court of Appeals has likewise held that sums written off by a health care provider do not constitute amounts "actually incurred" for purposes of applying the limitation set forth in section 41.0105. *Matbon, Inc. v. Gries,* No. 11-06-00258-

10

CV, 2009 WL 94310 at *5-6 (Tex.App.–Eastland Jan. 15, 2009, no pet. h.)(holding that the collateral source rule was not eviscerated by the adoption of section 41.0105).

In another case dealing with section 41.0105, this Court held that the trial court did not abuse its discretion in formulating a procedure for implementation of that section through the introduction of post-judgment testimony regarding medical expenses that were discounted, written-down, or written-off. *Gore v. Faye,* 253 S.W.3d 785 (Tex.App.–Amarillo 2008, no pet.). In *Gore,* the procedure for implementation of section 41.0105 was at issue, not the interpretation of the statute itself.[7]

While the Texas Supreme Court has yet to weigh in directly on the matter, in *Daughters of Charity Health Services of Waco v. Linnstaedter,* 226 S.W.3d 409 (Tex. 2007), the Court indicated that it did favor a theory of jurisprudence that avoided a "windfall" to the injured party created by the discounted difference between a hospital's "full charges" and the amounts actually paid by the injured party's workers' compensation carrier. In discussing the extent to which a hospital could file a lien against its patient's tort chose in action, the Court said, "[w]e agree that a recovery of medical expenses in [the full undiscounted amount] would be a windfall; as the hospital had no claim for these amounts against the patients, they in turn had no claim for them against [the wrongdoer]." *Id.* at 412. While *Linnstaedter* did

---

[7]We remain convinced that applying section 41.0105 post-verdict, as a cap to recoverable damages, remains a sound judicial procedure. *Matbon, Inc. v. Gries,* No. 11-06-00258-CV, 2009 WL 94310 at *5-6 (Tex.App.–Eastland Jan. 15, 2009, no pet. h.) *See also* Judge Gisela D. Triana-Doyal, *Another Take on "Actually Paid or Incurred",* 72 Tex.B.J. 16, January 2009, for arguments in favor of a post-verdict application of the "paid or incurred" limitation.

not deal with interpretation of section 41.0105, it does support the position that *compensation* is the ultimate purpose of our system of jurisprudence.

A long line of cases have held that the purpose for allowing the recovery of actual damages, also called "compensatory damages," is to repair a wrong or to compensate the injured plaintiff for an injury. *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552 (Tex. 1985), *modified on other grounds, Johnson & Higgins, Inc. v. Kenneco Energy,* 962 S.W.2d 507 (Tex. 1998); W. Keeton, et al., *Prosser and Keeton on the Law of Torts* § 2 (5th ed. 1984). Therefore, we find that an interpretation of section 41.0105 that limits an injured party's recovery of medical or health care expenses to those amounts necessary to *compensate* the injured party for sums "actually paid or incurred" is consistent not only with the Legislature's intent, but also with our jurisprudential philosophy and history.

Because Hernandez's medical bills were discharged in bankruptcy, recovery of said sums by Hernandez is not necessary to *compensate* him for his injuries.[8] For purposes of section 41.0105, those expenses were neither paid nor "actually incurred." Accordingly, we sustain Tate's second issue. Because the jury's award was limited exclusively to sums either discharged in bankruptcy or written-off by the medical provider, the trial court should have rendered a take-nothing judgment.

---

[8]The question of whether a bankrupt *party* is entitled to recover *compensation* for medical expenses "actually incurred" is separate and distinct from the question of whether a bankrupt *estate* is entitled to recover those same damages. Where the bankrupt party would no longer have a legal duty to pay the medical providers, the bankrupt estate would continue to owe a duty to all creditors of the bankrupt estate. Accordingly, we express no opinion as to whether or not a trustee in bankruptcy, pursuing a bankrupt party's chose in action against a tortfeasor on behalf of the bankrupt estate, would be entitled to recover damages for past medical expenses.

12

Our disposition of Tate's second issue pretermits consideration of her remaining issues pertaining to the exercise of jurisdiction over non-parties, the imposition of a constructive trust, and the *de facto* award of attorney's fees in a personal injury case. Tex. R. App. P. 47.1.

## Conclusion

While, in the beginning, we postulated that the role of personal injury litigation in our society might be the ultimate question presented by this appeal, we must be satisfied to accept that the answer to that question is an unanswerable enigma, not within the exclusive province of either realm, compensation, or punishment. In some instances damages are designed solely to compensate the injured party; while in others, solely to punish the wrongdoer. Without clear legislative direction, the paid or incurred statute, the collateral source rule, and the courts of this state are, like Hamlet, destined to perpetually ponder their role in social fabric of our jurisprudence. We reverse the trial court's judgment and render judgment that Hernandez take nothing.

Patrick A. Pirtle
Justice

Quinn, C.J., concurring in result.

Campbell, J., concurring.

Publish.

13